MARTIN COLTON AND YVONNE COLTON, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5802–70.   Filed June 14, 1971.

*Towner Leeper*, for the petitioners.

*Ralph V. Bradbury, Jr.*, and *George H. Jelly*, for the respondent.

### OPINION

FEATHERSTON , *Judge:* Respondent determined a deficiency in petitioners' Federal income tax for 1967 in the amount of $390.14. The only issue for decision is whether, within the meaning of section 152(e),[1] the father of petitioner Yvonne Colton's three children provided at least $600 for the support of each child during 1967.

Martin Colton and Yvonne Colton (hereinafter petitioner), husband and wife, were legal residents of El Paso, Tex., at the time they filed the petition. They filed a joint Federal income tax return for 1967 with the district director of internal revenue, Austin, Tex.

The facts, all stipulated, disclose that petitioner was married to Harry H. Levy III (hereinafter Levy) prior to June 28, 1963, when they were granted a divorce by the District Court of El Paso County, Tex. The divorce decree incorporated by reference a property settlement agreement, which in turn referred to a child custody and support agreement. Under the terms of this latter agreement, petitioner was awarded custody of the three children of the marriage, and Levy was obligated to pay her $550 per year for the support of each child. Levy was granted temporary custody of the children for 1 month during

---

[1] All section references are to the Internal Revenue Code of 1954, as in effect during 1967.

each summer and during alternate Christmas and Easter vacations, The child custody and support agreement further provided:

So long as HARRY H. LEVY, III makes all the child support payments provided for herein, he shall be entitled to claim all three of the children as his dependents on his own Income Tax return, and the said YVONNE G. LEVY shall not claim the said children as her dependents on her returns so long as said HARRY H. LEVY, III makes the child support payments.

Levy remarried and continued to live in Texas, a community property State. During 1967, he provided at least $600 out of his earnings for the support of each of the three children.

Petitioner also remarried, and during 1967 she and her new husband contributed more than half of the support of each of the children. On their income tax return for 1967, they claimed dependency exemption deductions for all three of the children. Respondent disallowed the deductions, determining that the children were not dependents of petitioner and her new husband within the meaning of section 152.

Petitioner admits that the amounts provided by Levy exceeded $600 for each child and satisfied his obligation under the child custody and support agreement, and that the agreement provided that so long as he made such payments he was entitled to claim the children as his dependents. She further admits that, under section 152(e),[2] these facts would ordinarily prevent her from claiming the children as her dependents regardless of the amounts which she expended for their sup-

---

[2] SEC. 152. DEPENDENT DEFINED.

(a) GENERAL DEFINITION.—For purposes of this subtitle, the term "dependent" means any of the following individuals over half of whose support, for the calendar year in which the taxable year of the taxpayer begins, was received from the taxpayer (or is treated under subsection (c) or (e) as received from the taxpayer) :

\*     \*     \*     \*     \*     \*     \*

(e) SUPPORT TEST IN CASE OF CHILD OF DIVORCED PARENTS, ETC.—

(1) GENERAL RULE.—IF—

(A) a child (as defined in section 151(e)(3)) receives over half of his support during the calendar year from his parents who are divorced or legally separated under a decree of divorce or separate maintenance, or who are separated under a written separation agreement, and

(B) such child is in the custody of one or both of his parents for more than one-half of the calendar year,

such child shall be treated, for purposes of subsection (a), as receiving over half of his support during the calendar year from the parent having custody for a greater portion of the calendar year unless he is treated, under the provisions of paragraph (2), as having received over half of his support for such year from the other parent (referred to in this subsection as the parent not having custody).

(2) SPECIAL RULE.—The child of parents described in paragraph (1) shall be treated as having received over half of his support during the calendar year from the parent not having custody if—

(A)(i) the decree of divorce or of separate maintenance, or a written agreement between the parents applicable to the taxable year beginning in such calendar year, provides that the parent not having custody shall be entitled to any deduction allowable under section 151 for such child, and

(ii) such parent not having custody provides at least $600 for the support of such child during the calendar year, \* \* \*

port. She seeks to avoid the effects of this section and her agreement, however, on the narrow ground that the amounts which Levy expended for the support of the children were community funds, half of which belonged to his new wife, with the result that the "parent not having custody" did not provide "at least $600 for the support of * * * [each] child during the calendar year," as required by section 152(e)(2)(A)(ii).

Section 152(e), adopted in 1967, is a remedial measure, enacted to amend the unsatisfactory provisions of prior law as they related to divorced or separated parents. Under those prior provisions, a divorced parent claiming his child as a dependent was required to establish that he contributed over half of the child's support. To meet his burden of proof, he had to show not only the amounts which he provided, but also the total amounts furnished for the child's support. See, e.g., *Aaron F. Vance*, 36 T.C. 547, 549 (1961). Ordinarily, the only means for establishing the total support was through the testimony of his former spouse who, because of possible animosities and adverse interests, frequently was found to be an unsatisfactory witness. The problem was described in H. Rept. No. 102, 90th Cong., 1st Sess. (1967), 1967-2 C.B. 591, as follows:

> In many cases each parent honestly believes that he has contributed more than one-half of the support. The problem is compounded because of the ill will which sometimes exists between divorced or separated parents. In these cases the Internal Revenue Service finds itself in the position of an unwilling arbiter between the contending parents. * * *

The report also recognizes that these difficult problems of proof cast an undue burden on divorced parents, tax administrators, and the courts. In an effort to alleviate these and other difficulties for both the taxpayers and the Internal Revenue Service, Congress adopted the amendment.

Section 152(e) lays down the general rule that, if the parents provide more than half of the child's total support, the parent having custody of the dependent child for the greater part of the year shall be treated as having provided over half of his support. However, there are exceptions to this rule. The one with which we are concerned, section 152(e)(2)(A), permits the parents, as part of their divorce or separation arrangements, to agree that the noncustodial parent will be entitled to the exemption deduction for the child even though he does not provide over half of the child's support. This exception was designed to make it possible "for the courts hearing divorce and separation suits to resolve this issue [i.e., which parent is to receive the dependency exemption deduction] in many cases at the time they are considering the financial arrangements which are to apply between the parents and to take the income tax deduction directly into account

in this connection"; it was further intended to provide "a means whereby parents who can reach an amicable agreement may resolve the issue with certainty." H. Rept. No. 102, 90th Cong., 1st Sess. (1967), 1967-2 C.B. 592; S. Rept. No. 488, to accompany H.R. 6056 (Pub. L. 90-78), 90th Cong., 1st Sess., p. 3 (1967). Under this exception, a child is to be treated as receiving over half of his support from the parent not having custody if (1) a decree of divorce or separate maintenance, or a written agreement between the parents provides that the noncustodial parent is to have the dependency exemption deduction, and (2) the noncustodial parent contributes at least $600 for the support of the child during the calendar year.

In the present case, the parties have stipulated that Levy "earned a salary * * * from which during 1967 at least $600.00 was provided for the support of each child." We think this stipulation, coupled with the provisions of the child custody and support agreement, is sufficient to show that Levy has met the requirements of section 152(e)(2)(A)(ii), quoted in footnote 2 *supra*. Accordingly, he is entitled to the dependency exemption deductions for the three children, and petitioner is not.

In reaching this conclusion, we do not question the correctness of petitioner's contention that Levy's salary was community property, belonging as a matter of property law to him and his new wife equally. Tex. Rev. Civ. Stat. Ann. art. 4619 (1960); *Keller* v. *Keller*, 135 Tex. 260, 141 S.W.2d 308 (1940). We do not think, however, that the community or separate property character of the funds used to discharge the support obligation is dispositive. Rather we think Congress intended to adopt a rule which would work equally well in all the States, those with community property, as well as those with noncommunity property, laws. The objective was to allow the parents to agree between themselves that the noncustodial parent could have the deduction, but to permit such an agreement only if that parent contributed at least some amount to the child's support.

Petitioner recognizes that Levy's obligation to make payments toward the support of his children persisted, notwithstanding his remarriage. The obligation was his, payable out of his earnings, and he was answerable personally to the local court in the event he failed to discharge it. See, e.g., *Gully* v. *Gully*, 111 Tex. 233, 231 S.W. 97, 100 (1921); *Brito* v. *Brito*, 346 S.W.2d 133 (Tex.Civ.App. 1961); *Morris* v. *Morris*, 406 S.W.2d 550 (Tex.Civ.App. 1966). Levy's new wife was under no obligation to make the payments. The fact that he was entitled to make them out of his earnings, which were community funds, does not show that the obligation was partly that of his wife or that he did not provide the requisite support within the meaning of section 152(e)(2)(A)(ii). Whether the payments are viewed as having been

made entirely by Levy individually, by him as manager of the marital community, or one-half by his new wife for his benefit, the result is the same—they discharged his obligation, and he is considered to have provided the payments. The payments obviously would have met the requirements of the section if Levy had not remarried or if he had not resided in a community property State. We think the payments, even though made from his earnings after his remarriage, are sufficient to permit the child custody and support agreement to be given effect.

In so interpreting section 152(e), we have borne in mind its remedial character and have sought to apply it in such way as to achieve the legislative objectives. *Griffiths* v. *Commissioner*, 308 U.S. 355, 358 (1939); *Warren R. Miller, Sr.*, 51 T.C. 755, 761 (1969). The section was obviously intended to be a practicable, workable solution of the troublesome problem of determining which of the divorced parents is entitled to the dependency exemption deductions for their children, and, wherever possible, to permit them to agree on the matter themselves. This problem was no less serious in community property States than in common law States, and no less difficult for divorced and remarried parents than for divorced parents who remained unmarried. Yet, under the interpretation advocated by petitioner, a remarried, non-custodial spouse in a community property State could meet the requirements of section 152(e)(2)(A)(ii) only by showing a support contribution of $1,200 per child from community funds, $600 from separate funds, or a combination of the two sufficient to bring his individual contribution to the statutory $600.[3] Such an interpretation would introduce a whole new set of complexities—the necessity for distinguishing community from separate property—and would thus frustrate the congressional quest for simplicity and certainty. An interpretation so completely at variance with the declared legislative purpose should not be adopted unless required by the plain terms of the statute. *Bonwit Teller & Co.* v. *United States*, 283 U.S. 258, 263 (1931); *Green Bay Lumber Co.*, 3 T.C. 824, 830 (1944); *John Bell Keeble, Jr.*, 2 T.C. 1249, 1252 (1943), acq. 1944 C.B. 16.

Petitioner argues that the result which she advocates is required by the repeated use of the terms "parent" or "parents" throughout section 152(e), whereas the word "taxpayer" is used elsewhere in section 152. We do not agree. The other provisions of section 152 deal with the general definition of dependents and multiple support agree-

---

[3] Sec. 152(e)(1)(A) limits the section to situations where the child "receives *over* half of his support * * * from his parents." (Italic added.) Consequently, under the interpretation advocated by petitioner, the section would never apply in the case of remarried parents, residents of community property States, whose children are supported from their earnings. In every such case, since the earnings are community property, the parents would provide precisely one-half of the support and the new spouses would provide the other half. Nothing in the statute or its legislative history even suggests an intention to so limit the section.

ments; those provisions refer to any taxpayer and his relationship to a wide variety of possible dependents. Section 152(e), in contrast, is addressed exclusively to the dependency deductions of divorced parents, setting forth rules for determining which one of the parents will be entitled to the deductions. The terms "parents," "parent having custody," and "parent not having custody" were used as convenient terms for describing the person or persons involved in such situations. We do not think a more precise term or the term "taxpayer" could have been used without making the section very ambiguous or very cumbersome. The emphasis in section 152(e)(2)(A)(ii) was not upon the technical ownership of the $600 to be furnished by the "parent not having custody" but rather was designed, we think, to require a support contribution "for the support" of the child at least equal to the personal exemption deduction then allowable.[4]

Petitioner refers us to *Robert W. Jorg*, 52 T.C. 288 (1969), acq. 1969–2 C.B. xxiv, in support of her position. That case involved parents, living in a community property State, who obtained a divorce during the taxable year. The issue was whether the amounts paid for the support of the children by the husband after he was separated, but before he was divorced, should be treated as amounts furnished by him for purposes of determining whether he provided more than half of the children's support. This Court held that, since such funds belonged to the two parents equally, each parent was to be treated as having contributed half of them. That case, involving the allocation to each parent of amounts of support contributed from jointly owned funds for the purpose of measuring their respective contributions, is clearly inapposite to the facts of this case.

Also distinguishable is a line of cases, including *Raoul Walsh*, 21 T.C. 1063 (1954); *Robert A. Sharon*, 10 T.C. 1177 (1948), decision vacated and remanded, in accordance with the stipulation of the parties, by the Court of Appeals for the Fifth Circuit; and *Commissioner v. Newcombe*, 203 F.2d 128 (C.A. 9, 1953), affirming a Memorandum Opinion of this Court, dealing with the deductibility of alimony paid from the community funds of a remarried husband and his new wife. The statute (secs. 22(k) and 23(u), 1939 Code) allowed a deduction for the discharge of a legal obligation of the "husband," and the Commissioner contended in those cases that the payments, though made from community funds, were deductible only by the husband. The new wife contended that, since the payments were made from

---

[4] Petitioners refer to Rev. Rul. 71–19, 1971–1 C, B, 43, which distinguishes between amounts provided by a custodial parent and her new spouse in determining whether the parents provided more than half of the child's support for purposes of sec. 152(e). The facts given in that ruling are insufficient to determine whether it could have any applicability in the present case, and we express no opinion as to its correctness.

community funds, she was entitled on her separate return to share the deduction. In *Commissioner* v. *Newcombe, supra* at 129, the court explained:

When the Supreme Court in *Poe* v. *Seaborn*, 282 U.S. 101, 51 S.Ct. 58, 75 L.Ed. 239, held that married couples in community property states could split the income of the marital community between them for tax purposes, it followed as a logical corollary that the allowable deductions should also be divided between husband and wife. * * *

Rejecting a rule which would make the deduction for alimony payments "depend upon the means chosen by the husband to pay his obligations to his former wife" and a rule which would view payments made from community funds as being made by a third person, the court added (p. 131):

The deduction is allowed one-half to the wife solely out of recognition for tax purposes of the concept of community net income, i.e., community gross income less deductible community expenditures and disbursements.

Thus, the issue in this line of cases involved the concept of community net income, or the sharing within the community of the deductions flowing from a payment from community funds. No such problem is here presented. Long ago the nontechnical rule was adopted that deductions for dependent children supported from community income "may be claimed by either husband or wife" filing separate returns. I.T. 1275, I–1 C.B. 201 (1922). The issue here does not involve the sharing of deductions within the community or the concept of community net income, but payments of an obligation to someone outside the marital community. The issue is simply whether a parent "provides" support for *his* children when he uses *his* salary to pay *his* contractual or court-decreed obligation. For the reasons stated, we think he does.

Since Levy provided more than $600 for the support of each of the three children, petitioner is bound by her agreement that he is to have the dependency exemption deductions.

Reviewed by the Court.

*Decision will be entered for the respondent.*