ROBERT R. BOTTOME, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2220–70.  Filed May 3, 1972.

---

*William J. Gibbons, Robert J. Cunningham,* and *Robert H. Dilworth,* for the petitioner.

*James F. Hanley.,* for the respondent.

OPINION

TIETJENS, *Judge:* The Commissioner determined deficiencies in the petitioner's income tax in the amounts of $438.76 for 1964, $22,199.20 for 1965, and $6,658.40 for 1966.

This case was fully stipulated pursuant to Rule 30, Tax Court Rules of Practice. The facts which we deem necessary for decision will be referred to below.

The sole issue for our determination is whether petitioner is entitled to exclude from his community share of his foreign-source earned income $35,000 for 1964 and $25,000 for both 1965 and 1966 or whether he is entitled to exclude only one-half of those respective amounts, under section 911 (a) and section 911(c).[1] The validity of section 1.911–2(d) (4) (ii), Example 5, Income Tax Regs., is challenged.

Petitioner Robert R. Bottome is a United States citizen who resided in Caracas, Venezuela, during the years in question. He filed individual income tax returns on a calendar year basis with the director of international operations, Washington, D.C.

Petitioner first took up residence in Venezuela in 1939, and he was a bona fide resident of that country during the taxable years and for a period of at least 3 consecutive years prior thereto. Thus, he qualifies under the statutory language of section 911(c) (1) (B) set out in footnote later. The wife of petitioner is a citizen of Venezuela who has lived with petitioner since their marriage in 1942 and at all pertinent times has been a nonresident alien.

Several Venezuelan corporations have employed petitioner as an officer or director, and he received compensation for services rendered in those capacities in the amounts of $114,199.98, $197,436.20, and $131,898.35 for the years 1964, 1965, and 1966, respectively.

Under the community property law of Venezuela, petitioner and petitioner's wife each own one-half of the foregoing amounts. Peti-

---

[1] All statutory references are to the Internal Revenue Code of 1954 unless otherwise stated.

tioner's wife, a nonresident alien, was not required to report her one-half share of the community income for Federal income tax purposes.

Most of petitioner's compensation and most of petitioner's gross income was earned income received from sources without the United States, as the following schedule shows:

| Year | (1) Total corporate compensation | (2) Petitioner's community share of (1) | (3) Petitioner's U.S. income from return | (4) Additional U.S. income (stipulated) | (5) Petitioner's community share of foreign-earned income ((2)−(4)) | (6) Petitioner's gross income [1] ((3)+(4)+(5)) |
|---|---|---|---|---|---|---|
| 1964 | $114,199.98 | $57,099.99 | $1,300 | $403.33 | $56,696.66 | $58,399.99 |
| 1965 | 197,436.20 | 98,718.10 | 1,100 | 1,395.45 | 97,322.65 | 99,818.10 |
| 1966 | 131,898.35 | 65,949.18 | 300 | 252.08 | 65,697.10 | 66,249.18 |

[1] Determined without applying the exclusion under sec. 911.

Petitioner had deductible interest expense in the amounts of $3,081.98, $3,714.95, and $1,155.90 during 1964, 1965, and 1966 respectively.

The amount of Venezuelan income taxes paid by petitioner with respect to his share of the community gross income in excess of the applicable limitation for the years 1959 through 1963 under section 904(a) is as follows:

| Year | Foreign tax paid |
|---|---|
| 1959 | $10,028.07 |
| 1960 | 4,896.84 |
| 1961 | 1,869.46 |
| 1962 | 3,445.75 |
| 1963 | 0 |
| | 20,240.12 |

Petitioner paid Venezuelan income taxes on his share of the community gross income in the amounts of $2,683, $8,075.65, and $13,817.98 during 1964, 1965, and 1966, respectively.

In the statement accompanying the deficiency notice the Commissioner explained the adjustments which are in issue as follows:

Your contention that you are entitled to the full exclusion of $35,000 in 1964, and $25,000 in each of the years 1965 and 1966, under section 911 of the Internal Revenue Code of 1954, has been given careful consideration and is denied.

It has been determined that as a bona fide resident of Venezuela who has received earned income from sources without the United States attributable to services performed during the years indicated, you may exclude the following amounts from gross income:

| Year | Amount |
|---|---|
| 1964 | $17,500 |
| 1965 | 12,500 |
| 1966 | 12,500 |

Section 911[2] among other things states under circumstances here applicable, that an individual citizen of the United States residing abroad shall not include in gross income certain earned income received from sources outside the United States. In 1962 Congress placed limitations on the amount of such earned income which may be excluded, and during all the taxable years of petitioner before us the applicable ceiling was that established by section 911(c)(1)(B)— $35,000 in 1964 and $25,000 thereafter. As the technical explanations of section 911(c)(3) in the committee reports of both Houses of Congress state, the amount excludable under section 911 "is to be neither increased nor decreased solely by operation of community property law." H. Rept. No. 1447, 87th Cong., 2d Sess., p. A–86 (1962), 1962–3 C.B. 584; S. Rept. No. 1881, 87th Cong., 2d Sess., pp. 233–234 (1962), 1962–3 C.B. 937; sec. 1.911–2(d)(4)(i), Income Tax Regs. Both parties refer to this language but offer different interpretations of it.

Example 5 of section 1.911–2(d)(4)(ii), Income Tax Regs., states the Commissioner's position concerning the amount of the exclusion

---

[2] Sec. 911 provides, in pertinent parts, as follows:

SEC. 911. EARNED INCOME FROM SOURCES WITHOUT THE UNITED STATES.

(a) GENERAL RULE.—The following *items shall not be included in gross income and shall be exempt from taxation* under this subtitle.

(1) BONA FIDE RESIDENT OF FOREIGN COUNTRY.—*In the case of an individual citizen* of the United States who establishes to the satisfaction of the Secretary or his delegate that he has been a bona fide resident of a foreign country or countries for an uninterrupted period which includes an entire taxable year, *amounts received from sources without the United States* (except amounts paid by the United States or any agency thereof) *which constitute earned income attributable to services performed* during such uninterrupted period. *The amount excluded* under this paragraph for any taxable year *shall be computed by applying the special rules contained in subsection* (c).

\* \* \* \* \* \* \*

An individual shall not be allowed, as a deduction from his gross income, any deductions (other than those allowed by section 151, relating to personal exemptions) properly allocable to or chargeable against amounts excluded from gross income under this subsection.

\* \* \* \* \* \* \*

(c) SPECIAL RULES.—For purposes of computing the amount excludable under subsection (a), the following rules shall apply:

(1) LIMITATIONS ON AMOUNT OF EXCLUSION.—*The amount excluded from the gross income of an individual under subsection* (a) for any taxable year *shall not exceed an amount* which shall be computed on a daily basis at an annual rate of—

\* \* \* \* \* \* \*

(B) $25,000 in the case of an individual who qualifies under subsection (a)(1), but only with respect to that portion of such taxable year occurring after such individual has been a bona fide resident of a foreign country or countries for an uninterrupted period of 3 consecutive years.

\* \* \* \* \* \* \*

(3) TREATMENT OF COMMUNITY INCOME.—In applying paragraph (1) *with respect to amounts received for services performed* by a husband or wife *which are community income* under community property laws applicable to such income, *the aggregate amount excludable under subsection* (a) *from the gross income of such husband and wife shall equal the amount which would be excludable if such amounts did not constitute such community income.*

[Emphasis supplied.]

available to petitioner and, save in minor respects, premises its conclusion on a set of hypothetical facts identical to the case before us:

*Example (5)*. H, a United States citizen who files his returns for the calendar year using a cash receipts and disbursements method of accounting is privately employed and a bona fide resident of Scotland for his entire taxable year 1963. H receives $50,000 during his taxable year 1963 for services performed abroad during such taxable year. W, the wife of H, is a nonresident alien who has never been present in the United States and earns no income of her own. H and W's marital domicile is in a community property jurisdiction. One-half of H's earnings ($25,000) belong to W under community property laws and W is exempt from tax on such amount because it is income from sources without the United States. *The division of income, however, also divides the exemption provided under paragraph (a) of this section.* Thus, the amount excludable by H from his gross income under paragraph (a) of this section is limited to $10,000; the remaining $15,000 is includible in H's gross income. [Emphasis supplied.]

This example in effect establishes a special rule in cases where the taxpayer's spouse is a nonresident alien who is not subject to tax under subpart A, part II, of subchapter N and the marital domicile is in a community property jurisdiction, whether a foreign country or a State within the United States. On petitioner's income tax returns, the exclusion was computed according to the regulation. We think this latter fact is of no significance.

Petitioner here contends that he is entitled to use the full exclusion applicable to each year inasmuch as it is stipulated that his earned income from sources without the United States, even after "splitting" half of it under Venezuela law with his wife, exceeded the maximum amount excludable under section 911(c)(1)(B). He argues that if the earned income were not subject to community property law, then, he clearly could exclude up to the limit. Further, he points out that:

The general explanation of Section 911(c)(3) contained in both the House Ways and Means Committee Report and the Senate Finance Committee Report is as follows:

"In applying either the $20,000 or $35,000 ceiling under community property laws the total community income excludable may not exceed the amount which would be excludable if this income were not community income. Thus, *one $20,000 or $35,000 ceiling will apply with respect to the husband's earnings abroad even though under community property law, half of this income is the income of the wife.* However, if both husband and wife are abroad and earn income, separate ceilings will be applied with respect to the services of each.[8]"

[8] H. Rep. No. 1447, 87th Cong. 2d Sess. 54, 55 (1962); S. Rep. No. 1881, 87th Cong., 2d Sess. 74, 76 (1962). [Emphasis added.]

We think petitioner's interpretation of section 911(c)(3) and the pertinent language of the committee reports is correct.

The Commissioner condenses his argument as follows:

Respondent contends that petitioner is entitled to only one-half of the full exclusion under the provisions of section 911 of the Internal Revenue Code of 1954.

In essence, a dividing of the compensation (income) requires a dividing of the exclusion.

The bases for respondent's position are the statute and with respect to its regulations, specifically, Regs. 1.911–2(d) (4) (ii), Example (5). Further to allow petitioner the full exclusion, would be to favor him over other similarly situated taxpayers whose wives are other than non-resident aliens. Respondent contends that without a clearcut congressional mandate, such favored treatment is not permissible.

We do not find much, if anything, in the statute to support the Commissioner and we think he must stand or fall on the validity of Example (5) of section 1.911–2(d) (4) (ii), Income Tax Regs. We fully appreciate that "the regulations are entitled to respect and are not to be held invalid except for good reason." *Estate of Lawrence R. McCoy*, 50 T.C. 562, 567. Nevertheless we hold this subsection invalid.

If we refer to the portions of the statute which we have italicized, we find that the amounts received by the petitioner were earned income from abroad. Hence, as we understand the statute, the amounts shall not be included in gross income and shall be exempt from taxation subject to the limitations imposed by subsection (c), i.e., $35,000 in 1964 and $25,000 in each 1965 and 1966. The petitioner does not claim more.

With respect to section 911(c) (3) it is provided that of amounts earned by a husband or wife which are community income, the amount excludable from the gross income of such husband *and* wife shall equal the amount excludable if such amounts did not constitute community income. The Commissioner seizes on the word "and," arguing that in order for the full amount of the exclusion to be usable, both the husband and wife must somehow have to report all the income in the first place. Here, of course, the wife, being a nonresident alien, was not required by the internal revenue laws to report her one-half share of the community income for Federal income tax purposes. We do not think this fortuitous circumstance precludes petitioner from using the full exclusion allowed by section 911. As the court said in commenting on this section in *Renoir* v. *Commissioner*, 321 F. 2d 605, 607 (C.A. 9, 1963):

We think that it was the intent of Congress that there be one exclusion in any one taxable year from the total amount received abroad in that year, regardless of how that amount is subsequently reported by the individual taxpayers involved.

True this gives a taxpayer in petitioner's position an advantage not enjoyed by residents of non-community-property States, but we find nothing in the law which denies that advantage. If this be a loophole, the Congress can fill it.

As stated above, we think Example (5) of section 1.911–2(d) (4) (ii), Income Tax Regs., which would cut in half the statutory exclusion

claimed by petitioner, is not consonant with the statutory language and hence is invalid.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

RAUM, *J.*, dissenting: The decision of the majority is reached only by declaring invalid a Treasury regulation that is squarely in point. In so doing, the Court appears to have paid but little heed to the well established rule that "Treasury regulations must be sustained unless unreasonable and plainly inconsistent with the revenue statutes and that they constitute contemporaneous constructions by those charged with administration of these statutes which should not be overruled except for weighty reasons." *Commissioner* v. *South Texas Co.*, 333 U.S. 496, 501. See also *Bingler* v. *Johnson*, 394 U.S. 741, 749–750; *Fawcus Machine Co.* v. *United States*, 282 U.S. 375, 378; *Boske* v. *Comingore*, 177 U.S. 459, 470; *Brewster* v. *Gage*, 280 U.S. 327, 336; *Textile Mills Corp.* v. *Commissioner*, 314 U.S. 326, 336–339; *Colgate Co.* v. *United States*, 320 U.S. 422, 426; *De Treville* v. *United States*, 445 F. 2d 1306, 1311–1312; *Buhler Mortgage Co.*, 51 T.C. 971, 979, affirmed per curiam 443 F. 2d 1362 (C.A. 9); *William F. Sanford*, 50 T.C. 823, 832, affirmed per curiam 412 F. 2d 201 (C.A. 2).

Certainly, the regulation which was here dealt a death blow is not "unreasonable," for the Court itself recognizes that the result which it reached "gives a taxpayer in petitioner's position an advantage not enjoyed by residents of noncommunity property states." Had this taxpayer lived in a common-law jurisdiction, his entire income would have been subjected to taxation, subject merely to an exclusion under section 911; but because he was in a community property jurisdiction, half of his earnings are allocable to his wife and excludable because she is a nonresident alien. Yet, by this decision, the Court adds to his tax benefits by applying the entire exclusion under section 911 to his one-half of the income. This windfall alone should have given the Court pause before invalidating a regulation that sought to avoid that result. And I find nothing in the legislative history or the decided cases which establishes that the regulation is "plainly inconsistent" with the statute.

Indeed, *Renoir* v. *Commissioner*, 321 F. 2d 605 (C.A. 9), affirming 37 T.C. 1180, relied upon by the majority, would appear to me to be precisely contrary to its position. There, the Court in effect required that the foreign-earned income exclusion be divided between spouses who were residents of a community property State.[1] The Court applied

---

[1] Compare *Stewart* v. *Commissioner*, 95 F. 2d 821 (C.A. 5), holding that in reporting community income, expenses relating to such income must be divided between the spouses.

the statute in such manner as not to discriminate in favor of residents of community property States. Surely, it is a matter of exquisite irony to invoke the *Renoir* case in support of the result reached by the majority herein. The language of the opinion in that case, relied upon, here, must be read in the light of the problem that was there being considered. In my judgment, similar language in the legislative history was intended merely to articulate the philosophy of the *Renoir* case.

The problem of applying the various provisions of the revenue laws to residents of community property jurisdictions has been productive of considerable confusion among the decided cases. But, as we pointed out in *Daniel M. Ebberts*, 51 T.C. 49, 54, "Although the theories discussed in the cases are not always consistent and at times are even confusing, there is nevertheless a discernable underlying principle that is common to virtually all of these cases, even though it may be articulated only on occasion, namely, that unless there is a clearly manifested legislative purpose to the contrary, the revenue laws will be interpreted in such manner as to prevent discrimination either for or against residents of community property States." The *Ebberts* case itself is a good example of that approach, and the opinion describes a variety of other situations in which the same approach has been followed. 51 T.C. at 53–54.[2]

In any event, considering the issue before us in the light most favorable to petitioner, his position is at best an arguable one. But it is in that very type of situation that a clearly applicable regulation should be regarded as controlling. I can find no excuse for declaring it invalid, and certainly, in the words of the *South Texas* case, I know of no "weighty reasons" for so doing.

DAWSON, SIMPSON, and QUEALY, *JJ.*, agree with this dissent.

---

[2] More recently, in *Martin Colton,* 56 T.C. 471, involving dependency exemptions for children of divorced parents, the Court was not beguiled by the applicable community property law and held without dissent that the purpose of the statutory provisions relating to dependency exemptions was not to be frustrated by a literal application of the statute.