JOQUE H. SOSKIS and MOSETTA S. SOSKIS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
SOSKIS v. COMMISSIONER
Docket No. 5030-77.
United States Tax Court
T.C. Memo 1978-499; 1978 Tax Ct. Memo LEXIS 14; 37 T.C.M. (CCH) 1851-49; December 19, 1978, Filed *14 Joque and his former wife Frances are the parents of Anna. Joque and Frances were divorced in 1971, custody of Anna being awarded to Frances. In 1973 and 1974, Joque and his second wife Mosetta, petitioners herein, claimed Anna as a dependent and used the correlative exemption. Custodial parent Frances made the same dependency claim of Anna and used the same exemption for 1973 and 1974. Respondent disallowed the use of the exemption by the petitioners for both 1973 and 1974. Held, although petitioners supplied over $1,200 in support of Anna, petitioners do not qualify for a dependency exemption for Anna, since custodial parent Frances still supplied over half of the total support of Anna. Section 152(e)(2)(B), I.R.C. 1954. Joque H. Soskis, pro se. Wm. Robert Pope, Jr., for the respondent. BRUCE MEMORANDUM FINDINGS OF FACT AND OPINION BRUCE, Judge: Respondent determined a deficiency of $240.00 and $276.97 in petitioners' Federal income tax for the taxable years 1973 and 1974 respectively. Certain items having been conceded by petitioners for the year 1974 and only one issue having been raised for the year 1973, each year presents only one issue for decision. The question is whether petitioners are entitled to a dependency exemption under section 151(e) [1] for Anna, petitioner-husband's daughter by a prior marriage, in either 1973 or 1974. *16 FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts is incorporated herein by this reference. Petitioners lived in Lexington, Kentucky, in both 1973 and 1974 when they timely filed joint Federal income tax returns for both years in question with the Internal Revenue Service Center, Memphis, Tennessee. Both petitioners lived in Chattanooga, Tennessee when the petition herein was filed. As Mosetta is a party to this proceeding only by virtue of having filed a joint return with Joque, we will hereinafter refer to Joque as petitioner. In 1967, petitioner married his first wife. On December 9, 1969, a daughter, Anna, was born to this marriage. The marriage ended in divorce in 1971. Custody of Anna and use of a house in Gainesville, Florida, owned jointly by petitioner and his first wife, was awarded by the divorce decree to the first wife. Petitioner's first wife subsequently remarried in June, 1973, and became Frances Roark (referred to hereinafter as the mother). From January through April of 1973, Anna and her mother lived in the Gainesville house. Although this time was prior to his marriage to the mother, Roland Roark *17 (hereinafter step-father) occasionally visited that house, using it as his corresponding location for mail and telephone calls from January through March. Anna and her mother occupied the house without any visitors during April 1973. They moved from that house, during the first week of May, to apartments in Daytona, which were also occupied by Anna and her mother alone [2] for the month of May. After marrying in June, the mother and step-father established their home, with Anna, in the same Daytona apartments, remaining there from June 1973 to May 1974. From June to July 1974 they lived in another apartment in Daytona before moving into their new house, also in Daytona. Monthly rent for the two Daytona apartments was $170.00 and $165.00 respectively. House mortgage payments were $271.00 monthly. The mother and step-father remained in the Daytona house, with Anna, for the remainder of 1974. Each of the residences above was furnished by the mother and step-father. While in Gainesville in 1973, the mother wrote checks for groceries *18 and utilities in the amounts of $401.16 and $424.72, respectively. For the remainder of 1973 in Daytona, similar checks were written for $1039.92 and $401.63, respectively. Checks written in 1974 for groceries and utilities by the mother and step-father totalled $1,549.48 and $707.23, respectively. We further find that the mother and step-father paid, specifically for Anna, the reasonable [3] expenses set forth below: 1973
Clothing
$ 300.00
Ravel/Recreation
125.00
Book Club
25.03
Child Care
790.00
Baby Sitting
18.00
Medical Insurance (by the mother)
55.84
Total
$ 1,313.87
1974
Clothing
$ 300.00
Travel/Recreation
118.85
Book Club
23.85
Day Care
899.00
Dance Lessons
117.50
Total
$ 1,459.20
During both 1973 *19 and 1974, petitioner paid $1,500.00 in child support. In addition, petitioner spent another $25.00 on Anna in 1973 and $100.00 in 1974 during visits. Thus, petitioner's total contribution to Anna was $1,525.00 in 1973 and $1,600.00 in 1974. Since petitioner supplied over the $1,200.00 statutory limit of section 152(e)(2)(B)(i) for Anna's support he listed Anna as a dependent for both 1973 and 1974. Since Anna lived with her mother for the entirety of both 1973 and 1974, the mother expended numerous support funds and also claimed Anna as a dependent for both years under section 152(e)(2)(B)(ii). Therein lies the dispute presented here. OPINION In dealing with the special dependency situation of a child of divorced parents, we must turn to section 152(e), which provides a special test to determine which parent is entitled to the personal exemption for the dependent child. Generally, the custodial parent is allowed the exemption. For the instant case, however, we look to section 152(e)(2)(B) for an exception which allows the non-custodial parent, petitioner here, to claim the child as dependent if that parent has provided $1,200 or more for the child's support and the custodial *20 parent can not clearly establish that she provided more support for the child during the taxable year than did the other parent. Clearly, petitioner jumps the first hurdle since it is agreed that he provided $1,500 in support payments in both 1973 and 1974. Thus, the burden of proof is shifted to the custodial parent under section 152(e)(2)(B)(ii) to show a greater support contribution. However, the mother, custodial parent, is not before the Court; therefore, the burden is placed upon the Commissioner, as respondent. Labay v. Commissioner,55 T.C. 6, 11 (1970), affirmed per curiam 450 F. 2d 280 (5 Cir., 1971). It is the respondent's burden, then, to show "by a clearpreponderance of the evidence" that the mother contributed more than half of the support for Anna in 1973 and again in 1974. Labay v. Commissioner,supra, at 13. Certain contributions to Anna's support by her mother have already been noted in the findings of fact as sufficiently proven. In addition to the contributions noted in the findings of fact as being made by the mother for Anna's support, contributions by the step-father are also to be treated *21 as from the mother. Colton v. Commissioner,56 T.C. 471 (1971);Rev. Rul. 73-175, 1973-1 C.B. 59; [4]Rev. Rul. 78-91, 1978-11 I.R.B. 6. These contributions include not only the residence and furnishing expenses after the mother's second marriage which will be discussed later, but also certain deductions from the step-father's paycheck for Anna's medical insurance. Each month, $10.76 was deducted. Therefore, from July to December 1973, $64.56 was specifically deducted for Anna, and $129.12 was deducted for the year 1974. Items which remain for decision, whether contributed by the mother or the step-father, are (1) the monthly amounts to be allocated for the various residences and furnishings used by Anna in 1973 and 1974; (2) the allowable amounts claimed as cash purchases of food and household goods for the years in question; and (3) whether the household *22 expenses prior to June 1973 should be allocated between two persons, Anna and her mother, or three persons, to include the stepfather, although this was prior to their marriage. Housing and Furnishings
Although petitioner and the mother were joint tenants of the Gainesville house, it has been shown by petitioner himself that the divorce decree awarded use of the house to the mother. No condition upon this use, relative to the minority of Anna, has been shown. Cf. Carter v. Commissioner,62 T.C. 20 (1974). Therefore, the use was clearly the mother's and thus, the lodging furnished Anna in that residence was furnished by the mother. Bruner v. Commissioner,supra.
It being established that the mother and step-father supplied Anna with a residence and furnishings, a value must be determined for them. In Blarek v. Commissioner,23 T.C. 1037 (1955), we rejected the idea that actual expenses necessarily determine the amount of support provided a dependent in the form of lodging owned by the person providing the support. Instead, the fair market value of the lodging is used. Section 1.152-1(a)(2)(i), Income *23 Tax Regs. Thus, for the Gainesville house, the fair monthly rental of that house will be used. Soon after the mother moved out, petitioner rented the Gainesville house for $175.00 per month. We accept this as the value of the Gainesville house from January to May 1973. Clearly, the rents for the Daytona apartment are the applicable sums for them, $170.00 from May 1973 to May 1974 and $165.00 for June and July of 1974. For the new house used for the remainder of 1974, however, no showing of fair market value was made. While monthly mortgage payments were shown to be $271.00, we do not find that this determines "fair market value" for our purposes here. Yet, a separate house, with more living space inside and outside, should be more valuable than a one-bedroom apartment. Therefore, in our best judgment, we find the fair market value of the new house for the remainder of 1974 to have been $185.00 per month. None of the values established above account for furnishings supplied by the mother and step-father. We find that $25.00 per month from January to May 1973 for the mother's furniture alone and $45.00 per month for the furnishings of both the mother and the step-father from *24 June 1973 to December 1974 are reasonable sums. Cash Purchases
As stated above, respondent's burden is to make a showing by a clear preponderance of the evidence. It has also been noted that this does not require every item to be supported by documentation. Pierce v. Commissioner,66 T.C. 840 (1976); Labay v. Commissioner,supra;Bruner v. Commissioner,supra.Respondent contends that the mother made cash purchases of groceries and household items of $500.00 for each year in question, thereby claiming total expenditures of $1,941.08 for 1973 ( $37 per week), and $2,049.48 for 1974 ( $39 per week). As figures for total food and household goods consumption for those years, we find those amounts totally acceptable and find that the mother did, indeed, make at least $500.00 worth of cash purchases of food and household goods. Division of Housing Expenses
From June 1973 to December 1974, there is no doubt that the living expenses incurred in the household occupied by Anna were for the benefit of three persons. As for April and May 1973, the months immediately before and after the mother's move to *25 Daytona, we must find that those expenses were shared by only two persons. However, for the period of January through March 1973, the number of persons sharing in the benefits of the household is not clearly ascertainable. Nevertheless, we know that Anna and her mother were present, and know that the step-father visited frequently, using the house in Gainesville as a point of communication. Such visitation and use of the house by the step-father however does not show a constant presence by the step-father. Therefore, we will divide those expenses for that period by two. Tables of our findings are set forth below: [5]
1973 [6]
Clothing $ 300.00
Travel/Recreation
125.00
Book Club
25.03
Medical Insurance (by the mother)
55.84
(by the step-
father)
64.56
Child Care
790.00
Baby-sitting
18.00
Total
$ 1,378.43
Gainesville
Housing (with Furniture) 3 X 200.00
600.00
Utilities
414.72
Food and Household Goods (checks)
401.16
(cash)
200.00
$ 1,615.88 / 2 $ 807.94
Housing (with Furniture) 1 X 200.00
/ 2 $ 100.00
Daytona
Housing (with furniture) 1 X 195.00
/ 2 $ 97.50
Housing (with furniture) 7X215.00
$ 1,505.00
Utilities
401.63
Food and Household Goods
1,039.92
300.00
3,246.55 / 3
$ 1,082.18
$ 3,466.05
Less Petitioner's Support Payment
1,500.00
Net Contributions by Custodial Parent
$ 1,966.05
Compare: Petitioner's Support
$ 1,500.00
Visit/Trip
25.00
$ 1,525.00
1974
Clothing $ 300.00
Travel/Recreation
118.85
Book Club
23.85
Medical Insurance (by the step-father)
129.12
Day Care
899.00
Dance Lessons
117.50
Total
$ 1,588.32
Housing (with Furniture)
January - May 5 X 215.00
$ 1,075.00
June-July 2 X 210.00
420.00
August - Dec. 5 X 230.00
1,150.00
Utilities
707.23
Food & Household Goods (checks)
1,549.48
(cas )
500.00
Total
$ 5,401.71 / 3
$ 1,800.57
$ 3,388.89
Less: Petitioner's Support Payment
1,500.00
Net Contribution by Custodial Parent
$ 1,888.89
Compare: Petitioner's Support
$ 1,500.00
Visit/Trip
100.00
$ 1,600.00
*26 From the above comparisons we conclude that petitioner should not be allowed to claim Anna as a dependent for 1973 or 1974. It then follows that petitioner should not be allowed the correlative personal exemption for 1973 or 1974. Decision will be entered for the respondent. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, in effect during the years in issue, unless otherwise noted.↩
2. It was shown that the step-father's teenaged brother visited foa a short while in May 1973, but we find that inconsequential for our purposes.↩
3. Bruner v. Commissioner,39 T.C. 534 (1962), appeal dismissed per stipulation; cf. Cohan v. Commissioner,39 F. 2d 540↩ (2 Cir., 1930). It should be noted here that respondent contends that $30.00 was spent for haircuts and $35.00 for dental care in 1974 but no testimony or physical evidence is presented to support these amounts. The other expenses have been accepted unchanged.
4. See, Coltman v. Commissioner,T.C. Memo 1978-181, 37 T.C.M. 779, 47 P-H T.C. Memo P 78,181, appeal dismissed nolle pros. (6 Cir., Nov. 6, 1978); Meenk v. Commissioner,T.C. Memo 1970-302, 29 T.C.M. 1393, 39 P-H T.C. Memo P 70, 302↩.
5. Clearly, over half of Anna's total support in both years came from her two parents. No other sources of support have been claimed or shown. Section 1.152-4(a), Income Tax Regs.↩ Therefore, one of Anna's parents is entitled to the dependency exemptions, or inapplicability of section 16(b).
6. Although not precise, the allocations of living expenses for 1973 are inaccurate in petitioner's favor and still do not win the day for him.Therefore, any further effort to reach a greater perfection in this accounting would be pointless.↩