RAMON R. SANTIAGO, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 6652–71. Filed October 17, 1973.

*Jules G. Korner III*, for the petitioner.
*Robert D. Grossman, Jr.*, for the respondent.

■ 

OPINION

RAUM, *Judge:* The sole issue is whether petitioner was required to report gross income in amounts equal to only one-half of the ·gross income that he actually realized. He has defended the manner in which he reported income on his United States tax returns on the theory that Spanish law vests the ownership of one-half of the income of a marital community in each spouse at the time the income is realized, that he was domiciled in Spain during the taxable period in issue, that the Spanish law applied to him by reason of his Spanish domicile, and that half his income therefore belonged to his non-resident alien wife, who was exempt from taxation under the 1954 Code.

There is no dispute that the Spanish Civil Code contains comprehensive provisions relating to "conjugal partnership" or "community property" and that *if those provisions are applicable to petitioner,* they are of such character as to support his position with respect to his wife's ownership of one-half the income in dispute[2] and thus render him accountable only for the other half. Cf. *Poe* v. *Seaborn,* 282 U.S. 101; Rev. Rul. 56–269, 1956–1 C.B. 318; sec. 871 *et seq.,* I.R.C. 1954. The Government, however, contends that the Spanish community property laws are not applicable to petitioner. In this connection it argues that petitioner was not domiciled in Spain, that a proper application of the principles of renvoi in the conflict of laws calls for rejection of the applicability of the Spanish community property laws, and that in any event explicit provisions of the Spanish Code make its community property laws inapplicable to petitioner. Petitioner, on the other hand, argues that he was domiciled in Spain, disagrees vigorously with the Government as to its position relating to the conflict of laws, and denies that the explicit provisions of

[2] Cf. *Estate of Jose Simon,* 40 B.T.A. 651, acq. 1940–1 C.B. 4; Rev. Rul. 68–81, 1968–1 C.B. 40, made effective for taxable years beginning on or after Feb. 19, 1968, by Rev. Rul 69–213, 1969–1 C.B. 34; 3 Mertens, Law of Federal Income Taxation, sec. 19.02, p. 11 (1972 rev.).

Spanish law relied upon by the Government are applicable. In our opinion the record strongly supports petitioner's position that he was domiciled in Spain,[3] but we need not pass upon that issue here in view of the conclusion that we reach as to the last point. Nor is it necessary for us to consider the highly controversial and abstruse matters discussed and argued at length by the parties in respect of renvoi and the conflict of laws. For, in our view, the unambiguous provisions of article 1325 of the Spanish Code, which we consider hereinafter, must in any event apply, and such provisions make clear that the Spanish community property laws are inapplicable to petitioner.

Petitioner quite correctly argues that our Internal Revenue Code merely describes what type of income shall be taxed and how it shall be taxed, that it does not set up any standards of ownership for purposes of determining which taxpayer shall be charged with the income in question, and that this is a matter that must be determined by local law. *Morgan* v. *Commissioner*, 309 U.S. 78, 80–81, rehearing denied 309 U.S. 626; *Helvering* v. *Stuart*, 317 U.S. 154, 161–162, rehearing denied 317 U.S. 711. And he argues further that under Spanish community property law, he must be treated as the owner of only one-half of his earnings. But, even assuming that he was domiciled in Spain, article 1325 of the Spanish Code satisfies us that the Spanish community property laws are not applicable to him. Article 1325 (in English translation) reads as follows:

Should the marriage be contracted in a foreign country, between a Spaniard and a foreign woman or between a foreigner and a Spanish woman, and the contracting parties should not make any statement or stipulation with respect to their property, it shall be understood, when the husband is a Spaniard, that he marries under the system of the legal conjugal partnership [the "community property" laws of the Spanish Code], and when the wife is a Spaniard, that she marries under the system of law in force in the husband's country, all without prejudice to the provisions of this Code with respect to real property.

The record establishes that petitioner and his Spanish wife were married outside Spain, that no "real property" is involved herein, and that the spouses made no antenuptial contract in respect of their property, and nothing in the record suggests that they have entered into a property agreement since they have been married. Moreover, article 17 *et seq.* of the Spanish Code, which delineate those who are

---

[3] Cf. *Lincoln T. Taira,* 51 T.C. 662 (distinguishing *District of Columbia* v. *Murphy,* 314 U.S. 441) ; *Niki* v. *United States* (N.D. Cal., 71–2 U.S.T.C. par. 9526, affirmed per curiam 73–2 U.S.T.C. par. 9629 (C.A. 9)). We are satisfied that petitioner was a credible witness on his own behalf, and our findings of fact are based largely upon his testimony.

"Spaniards," make it reasonably clear that petitioner's wife was a "Spaniard," but there is no basis for such a finding in respect of petitioner.[4]

Under article 1325 of the Spanish Code, the community property provisions of the Code therefore appear not to apply to petitioner and his wife. Rather, the aplicable law is that of "the husband's country," and it is the view of both parties as well as that of a Spanish official, whose written statement was submitted in evidence by the Government, that "the husband's country" in article 1325 refers to the country of which the husband is a citizen.[5] Petitioner was a citizen of the United States and not of Spain, and there is, of course, no Federal community property law in this country (nor is there any in New York State, where petitioner was born and with which he appears to have been more closely identified than with any other State). Under the principles of the Spanish Code, petitioner's position thus appears to be groundless.[6]

Petitioner has sought to defend his position in respect of the applicability of the Spanish community property law on the theory that, as a matter of Federal tax law, the interest of one spouse in property belonging to the other is governed by the law of the domicile of the income-earning spouse and that the only "law" which may thus be consulted is the *property* law of the domicile, without regard to whether such "property" law is in fact inapplicable by reason of provisions such as those contained in article 1325, which may perhaps be characterized as "conflict" rules or "procedural" rules. The point is not well taken. The problem before us is merely to determine how petitioner's earnings would be treated under Spanish law, and it is

---

[4] Art. 17 provides, *inter alia,* that children of a Spanish father or mother are generally to be regarded as "Spaniards," but subsequent provisions describe circumstances in which Spanish nationality may be lost. One way in which Spanish nationality may be forfeited is to acquire voluntarily another nationality. Although petitioner's parents were born in Spain, they lived for a while in the United States, and petitioner has failed to establish that they retained their Spanish nationality at the time of his birth, or, even if they did, that he himself has not forfeited his status as a "Spaniard."

[5] Cf. art. 10 of the Spanish Code, which provides that "Personal property is subject to the laws of the nation of the owner thereof."

[6] The applicability to petitioner of the community property provisions of the Spanish Civil Code is also called into question by an explanation of its genesis in a summary of the introduction thereto, which we have before us in English translation. It appears from that summary that Code provisions are in some cases subordinate to the so-called Derechos forales, or "local laws," of certain provinces or territories. Art. 12 of the Code itself appears to support the position of the author of the introduction, although the precise effect of art. 12 is unclear to us. This confusing state of Spanish legal affairs has, according to the summary of the Code introduction, made it "difficult to explain how civil legal provisions are coordinated." We have been unable to ascertain the extent to which the Code provisions relied upon by the parties may be preempted by "local laws" in the circumstances of this case, nor have the parties been of any help in establishing the supremacy of the allegedly applicable Code provisions.

plain that article 1325 would be regarded as controlling under such law, thereby rendering the community property laws of Spain inapplicable to petitioner. We are not persuaded by the contention that merely because article 1325 may be characterized as a "procedural" or "conflict" rule, it can be ignored through an application of the principles of conflict of laws.

The thrust of the theories expounded in the *Morgan* and *Stuart* cases is simply that the Federal tax statute is to be applied to the various rights or interests created by local law and that the extent or nature of such rights or interests must be determined under such local law. In short, the basic question here is whether the Spanish courts would treat petitioner's earnings as community property. And in our judgment, in the absence of any convincing authoritative exposition of Spanish law to the contrary, the courts of that country would apply article 1325, regardless of whether it be considered "procedural" or otherwise, and would conclude that by reason of article 1325 Spain's community property laws are not applicable to petitioner.[7]

Nor are we persuaded in this connection by petitioner's argument that the phrase "system of law in force in the husband's country" in article 1325 of the Spanish Code is meant to refer to anything more than the applicable *property* law of that country, if any. As we read the Spanish Code, it simply chooses to make its own community property provisions inapplicable in a case where the husband is a foreign national and the marriage took place outside Spain, and to defer, in such a case, to the ownership rules in force in the husband's country.[8]

*Decision will be entered for the respondent.*

---

[7] Probably the strongest case in petitioner's favor is *United States v. Rexach,* 185 F. Supp. 465, 477 (D. P.R.), an obscure decision by a Puerto Rican District Court, where there did not appear to be any specific statutory provision comparable to art. 1325, and where there were highly unusual circumstances involving the laws of at least three countries or jurisdictions. In any event, in failing to give effect to the plainly relevant coverage provisions of applicable local law, *Rexach* is at least superficially inconsistent in this respect with other decisions that have considerably greater precedential impact in this Court: *Shilkret v. Helvering,* 138 F. 2d 925, 929 (C.A. D.C.), affirming 46 B.T.A. 1163; *Marjorie Hunt,* 22 T.C. 228, 231–232, acq. 1954–2 CB. 4. Moreover, to regard petitioner as owning only half of his income pursuant to a community property law to which he is not subject would run afoul of the well-settled rule, *United States v. Mitchell,* 403 U.S. 190, 197, that "federal income tax liability follows ownership."

[8] Certain materials submitted by petitioner purporting to be translations of the writings of Spanish legal commentators indicate that the Spanish law on this point has not been authoritatively determined. Some support for our view of art. 1325, however, is to be found in the English case of *In re Duke of Wellington,* [1947] Ch. 506, 514–521, appeal dismissed (affirmed) [1947] 2 All E.R. 854, where the phrase "national law" in another article of the Spanish Code was construed to comprehend only substantive law, and not choice-of-law rules.