HELEN ROBINSON SOLANO, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2728–71. Filed July 31, 1974.

*Jules G. Körner III*, for the petitioner.
*Howard L. Williams*, for the respondent.

OPINION

SIMPSON, *Judge:* The respondent determined a deficiency of $514.17 in the Federal income tax of the petitioner for the year 1969. The issue for decision is whether the petitioner, a United States citizen and bona fide resident of Spain, may exclude the portion of the income which was earned by her husband, a nonresident alien, by the performance of personal services in Spain, and which was attributable to her by virtue of the community property law of Spain.

All of the facts have been stipulated, and those facts are so found.

The petitioner, Helen Robinson Solano, is a citizen of the United States and maintained her residence in Madrid, Spain, at the time her petition was filed in this case. She filed an individual income tax return for the year 1969 with the director of international operations, Washington, D.C. She reported income in accordance with the cash method of accounting.

In 1969, the petitioner was a bona fide resident and domiciliary of Spain. She first went to Spain to live in 1956 and, in 1960, married Ramon Solano, a Spanish citizen. No antenuptial contract was entered into by the petitioner and Mr. Solano, and the couple have continuously resided together in Spain since the marriage.

In 1969, the petitioner was a civilian employee of the United States Air Force in Spain, and her husband was a bullfighter. In that year, the petitioner received a salary of $7,692.80, and Mr. Solano had income after expenses in the amount of $5,306, attributable to the performance of personal services as a bullfighter. All of Mr. Solano's income was received from a source without the United States and was not received from the United States or an agency of the United States.

In her individual income tax return for the year 1969, the petitioner excluded from income $3,846, one-half of her salary from the United States, as attributable to her husband, a nonresident alien, under Spanish community property law. In addition, she recognized that $2,653 of her husband's income was attributable to her under Spanish community property law, but claimed exclusion or exemption of such share of her husband's income under the provisions of section 911 of the Internal Revenue Code of 1954.[1] In his notice of deficiency, the respondent disallowed the claimed exclusion for the petitioner's share of the income of her husband.

---

[1] All statutory references are to the Internal Revenue Code of 1954, unless otherwise indicated.

The parties have stipulated that, for purposes of this case, the petitioner's right to income earned by the petitioner and her husband is governed by the community property law of Spain. Under the provisions of the Spanish Civil Code (S.C.C.), persons about to be married may, by contract, provide for their rights in and the administration of the property which may accrue to them during the course of their marriage to each other. In the absence of such contract, all marriages are deemed to be contracted under the regime of legal conjugal partnership. Art. 1315, S.C.C. The conjugal partnership begins on the same day as the marriage is celebrated. Art. 1393, S.C.C. The earnings and profits of the spouses during the marriage belong to the husband and wife, share and share alike. Art. 1392, S.C.C. In all matters in which the rule of partnership law is not in conflict with the rules of conjugal partnerships, the conjugal partnership is governed by the rules of partnership law. Art. 1395, S.C.C.

It is undisputed that under Spanish community property law, the petitioner had a vested interest in one-half of the earnings of her husband. See *Estate of Jose Simon*, 40 B.T.A. 651 (1939); Rev. Rul. 68–81, 1968–1 C.B. 40, applicable for years beginning on or after Feb. 19, 1968, by Rev. Rul. 69–213, 1969–1 C.B. 34; see also *Ramon R. Santiago*, 61 T.C. 53, 57 (1973), on appeal (C.A.D.C. Jan. 14, 1974). For purposes of the issue before us, such interest is not materially different than the interest of a spouse in the income generated by the community or conjugal partnership in community property jurisdictions such as Washington State (*Poe* v. *Seaborn*, 282 U.S. 101 (1930); *Fink* v. *United States*, 454 F. 2d 1387 (Ct. Cl. 1972), certiorari denied 409 U.S. 844 (1972); *Graham* v. *Commissioner*, 95 F. 2d 174 (C.A. 9, 1938), reversing a Memorandum Opinion of this Court); California (*United States* v. *Malcolm*, 282 U.S. 792 (1931); *Renoir* v. *Commissioner*, 321 F. 2d 605 (C.A. 9, 1963), affirming 37 T.C. 1180 (1962)); Louisiana (*United States* v. *Mitchell*, 403 U.S. 190 (1971); *Bender* v. *Pfaff*, 282 U.S. 127 (1930); see also Pugh, "The Spanish Community of Gains in 1803: Sociedad de Gananciales," 30 La. L. Rev. 1 (1969–70)); and the Philippines (*Katrushka J. Parsons*, 43 T.C. 331 (1964)).

The petitioner contends that under section 911(a) the income in her hands is exempt from taxation even though actually earned by her husband. She claims the exclusion of foreign-earned income is analogous to the credit for earned income under section 31 of the Revenue Act of 1928, and that under such section, earned income attributable to a wife by virtue of local community law qualified for the credit. See *Graham* v. *Commissioner*, supra; see also *Fink* v. *United States*, supra. Under such approach, she claims to have met all the requirements of section 911(a) for exclusion. In the alternative, the

petitioner contends that her husband was a nonresident alien and that the income he earned was exempt because it was derived from personal services performed by him in Spain. See sec. 872; see also secs. 862 and 871. She claims that because such income was exempt in the hands of her husband, it is equally exempt in hers.

Section 911(a)(1) applies to citizens of the United States and allows them to exclude:

In the case of an individual citizen of the United States who establishes to the satisfaction of the Secretary or his delegate that he has been a bona fide resident of a foreign country or countries for an uninterrupted period which includes an entire taxable year, amounts received from sources without the United States (except amounts paid by the United States or any agency thereof) which constitute earned income attributable to services performed during such uninterrupted period. * * * [2]

"Earned income" is defined by section 911(b) to include "wages, salaries, or professional fees, and other amounts received as compensation for personal services actually rendered."

Section 872(a), which applies to nonresident aliens, provides that the gross income of such an individual includes only "gross income which is derived from sources within the United States" and "gross income which is effectively connected with the conduct of a trade or business within the United States." Section 861 enumerates those items of gross income which are to be treated as income from sources within the United States, and section 871 sets forth the manner in which the gross income of a nonresident alien individual is taxable.

A similar controversy was involved in *Katrushka J. Parsons, supra.* In that case, the petitioner was a citizen of the United States who was married to a nonresident alien and was a bona fide resident of a foreign country which was a community property jurisdiction. The issue was whether the petitioner was taxable on her share of income of a conjugal partnership which was received outside the United States from sources outside the United States. There was no finding by the Court as to whether or not such income was earned income as defined in section 911(b). The Court held that because of the community property law, the petitioner had a right to share in the income of her husband and that her share of such income was taxable to her.

As a result of that decision, section 981 was enacted in 1966. That provision allows an individual, who is a citizen of the United States, is married to a nonresident alien individual, and is a bona fide resident of a foreign country, to elect to treat earned income as the income of

---

[2] Sec. 911(a)(2) allows certain citizens to exclude income earned abroad when they are outside the United States but have not established a foreign residence. Although the petitioner has not explicitly indicated whether she is relying upon the exclusion contained in sec. 911(a)(1) or sec. 911(a)(2), we assume that she relies upon the provision applicable to foreign residents since she has established her residency in Spain.

the spouse earning it, notwithstanding community property law. Congress considered that the *Parsons* case dealt with earned income and recognized that in the absence of an election under section 981, the citizen is taxable on the share of the nonresident alien's earned income attributed to her by community property law. S. Rept. No. 1707, 89th Cong., 2d Sess. (1966), 1966–2 C.B. 1088. However, Congress wished to establish a procedure whereby the citizen could avoid taxation on such income and enacted the new provision for that purpose. S. Rept. No. 1707, *supra*, 1966–2 C.B. 1088. To avoid paying a tax on the income earned by the nonresident alien spouse, the citizen must elect to treat all compensation as earned by the spouse who actually performed the services. Congress did not choose merely to exempt the citizen from taxation on the income earned by the nonresident alien either by an amendment of section 872 or by an amendment of section 911.

The petitioner in this case could have made the election to qualify under section 981, but she has chosen not to do so. If she had made such an election, she would have been taxable on her entire salary, and no part of it would have been excludable by reason of the fact that one-half of it was attributed to her husband under the community property law of Spain. However, because she has not made the election, she has excluded from her income the one-half of her salary attributed to her husband, and she seeks to avoid taxation on the one-half of his compensation which is attributed to her under Spanish community property law. Such a result is clearly inconsistent with the implications of section 981 and its legislative history and with our decision in *Katrushka J. Parsons*, 43 T.C. 331 (1964).

It is obvious that Congress considered section 911 not to be applicable to income earned by a nonresident alien spouse and attributed to a citizen by operation of community property law. In drafting section 981, Congress referred to section 911(b) for a definition of earned income, and if it had believed that the income earned by the nonresident alien and attributed to the citizen was excludable under section 911, it could have easily amended that section to so indicate. In that event, it would have been unnecessary for Congress to enact a new provision, section 981, authorizing an election to exclude such income. Moreover, although the Court in *Parsons* did not find that the income at issue was earned income and did not expressly consider the possible applicability of section 911, its holding is applicable to any income from a conjugal partnership, irrespective of whether the income is earned or is derived from the ownership of property, and the rationale for the Court's conclusion indicates that such conclusion should be equally applicable to income earned by services and income derived from property.

Moreover, an examination of the reasons for the enactment of the exclusion now contained in section 911 demonstrates that such exclusion was enacted for the benefit of United States citizens. The exclusion was first enacted in 1926, and the stated reason for its enactment was to encourage American trade abroad by exempting the income earned by citizens who were residents abroad and selling American products. H. Rept. No. 1, 69th Cong., 1st Sess. (1925), 1939-1 C.B. (Part 2) 320; see also Hearings before the Committee on Ways and Means on Revenue Revision, 69th Cong., 1st Sess., pp. 176-185 (1925) (statement of O. K. Davis, representing the National Foreign Trade Council). In 1932, the exclusion was challenged, and as a result, compensation paid to employees of the United States was removed from the exclusion. The continuation of the exclusion for compensation paid to other employees was justified as necessary to place American citizens living and working abroad on equal footing with other workers abroad. See *Krichbaum* v. *United States*, 138 F. Supp. 515, 518-520 (E.D. Tenn. 1956); 75 Cong. Rec. 10410-10411 (1932). Those reasons for the exclusion have been reiterated by Congress in connection with subsequent amendments of the exclusion. S. Rept. No. 1631, 77th Cong., 2d Sess. (1942), 1942-2 C.B. 548-549; S. Rept. No. 781, 82d Cong., 1st Sess. (1951), 1951-2 C.B. 495-496; H. Rept. No. 894, 83d Cong., 1st Sess. (1953), 1953-2 C.B. 511; S. Rept. No. 685, 83d Cong., 1st Sess. (1953), 1953-2 C.B. 528-529. Such reasons for the exclusion have also been recognized in the cases and by the commentators. *Commissioner* v. *Wolfe*, 361 F. 2d 62, 66 (C.A.D.C. 1966), reversing on another issue 43 T.C. 572 (1965), certiorari denied 385 U.S. 838 (1966); *Andrew O. Miller, Jr.*, 52 T.C. 752, 761 (1969); *Krichbaum* v. *United States*, *supra* at 523; Notes and Comments, "Section 911 of the Internal Revenue Code and the Foreign-Based Partner," 74 Yale L. J. 956, 958 (1965); Slowinski & Williams, "The Formative Years of the Foreign Source Earned Income Exclusion: Section 911," 51 Taxes 355 (1973).

In this case, the income at issue was not earned by a citizen from sources outside the United States, but was earned by a nonresident alien. Since the purpose of section 911 was to relieve citizens who worked abroad and became residents of a foreign country of the tax on their foreign earnings, that purpose would not be served by applying section 911 to the income earned by a nonresident alien. Thus, there was good reason for Congress not to apply section 911 in this situation. This situation is distinguishable from that in which a citizen earned income that qualifies for exemption under section 911 and that is in part attributed by community property law to a spouse who is a citizen not qualifying for the exclusion in her own right. In that situation, the spouse is allowed to exclude the income attributed

to her, for otherwise, part of the exclusion would be lost as a result of the application of the community property law. See sec. 911(c)(3); sec. 1.911-2(d)(4), Income Tax Regs. When the income is earned by a nonresident alien, as in the present case, there is no reason to apply section 911.

The petitioner argues that if the applicability of section 911 is held to turn on the qualification of the person who earns the income, logic requires us to adopt a similar approach to section 872 and that under such approach, since the income earned by her nonresident alien husband was exempt from taxation, the portion attributed to her under the community property law should also be exempt. The application of the tax laws to income subject to community property law has resulted in a variety of problems, and in *Daniel M. Ebberts*, 51 T.C. 49, 54 (1968), this Court observed that "the theories discussed in the cases are not always consistent and at times are even confusing." The treatment of nonresident aliens has presented peculiar problems. For example, if a husband, who is a citizen of the United States, earns income outside the United States which is nonetheless subject to taxation, the portion of the income attributed by community property law to a wife who is also a citizen is taxable to her. *Fink* v. *United States*, 454 F. 2d 1387 (Ct. Cl. 1972), certiorari denied 409 U.S. 844 (1972). However, if in such a situation, the wife is a nonresident alien, the income attributed to her is not taxable. Sec. 862(a)(3); see *Robert R. Bottome*, 58 T.C. 212, 217 (1972), affirmed without opinion 486 F. 2d 1314 (C.A.D.C. 1973). In the treatment of her salary, the petitioner has taken advantage of this special treatment of nonresident aliens. She has excluded from her gross income the portion of her salary attributable to her husband under the Spanish community property law, and that portion of her salary is not taxable to him simply because he is a nonresident alien.

It may be that Congress, when it decided to provide a means whereby a citizen could avoid taxation on income earned by a nonresident alien spouse and attributed to the citizen by community property law, decided to require the citizen to make an election because of the special treatment of nonresident aliens. If the election is made, the citizen can avoid taxation on compensation earned by her husband, but she is then required to treat her own compensation as earned by her and, if such income is taxable, to pay the tax thereon. Since the petitioner has not made the election under section 981, we hold that she may not exclude the income earned by her husband and attributed to her under the Spanish community property law.

*Decision will be entered for the respondent.*