JOHN N. REESE, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 8523-73.    Filed June 12, 1975.

*Barring Coughlin* and *Robert A. Bergquist,* for the petitioner.
*Alan C. Klein* and *Larry L. Nameroff,* for the respondent.

## OPINION

DAWSON, *Chief Judge:* This matter is before the Court on motions for summary judgment filed by both parties, and on respondent's alternative objection filed to petitioner's motion for summary judgment. A hearing on the motions was held on March 26, 1975, and they were taken under advisement. Memoranda of law were filed by both parties and evidence regarding Brazilian law was submitted for our consideration.

A statutory notice of deficiency was mailed to petitioner on July 2, 1973. A petition was filed with this Court on November 29, 1973, and was answered by the respondent. On October 31, 1974, petitioner filed a motion for summary judgment under Rule 121.[1] On February 10, 1975, respondent filed a motion for summary judgment. Subsequently, on March 10, 1975, respondent filed a notice of objection to petitioner's motion for summary judgment.

We must first decide whether there exists any genuine issue of material fact to prevent our summary adjudication here of all or part of the legal issues in controversy. Rule 121. If we determine

---

[1] All Rule references are to the Tax Court Rules of Practice and Procedure, effective Jan. 1, 1974.

that summary judgment is warranted, we must then decide as a matter of law whether petitioner may exclude from his reported income any amount he received as compensation for services in 1969, 1970, and 1971 because such amount is income attributable solely to his wife, not a United States citizen, by virtue of applicable Brazilian community property law. Rule 146.

Respondent determined the following deficiencies in petitioner's Federal income taxes:

| Taxable year | Deficiency |
|---|---|
| 1969 | $9,328.94 |
| 1970 | 2,727.19 |
| 1971 | 11,528.91 |

Certain facts are not disputed by the parties.[2] John N. Reese, the petitioner, is an American citizen residing in Sao Paulo, Brazil. Each of his Federal tax returns in issue was filed with the District Director of Internal Revenue for the District of Washington, D.C. In addition to disputing the deficiencies in income taxes for 1969, 1970, and 1971, petitioner also claims overpayments in these years in the amounts of $55, $255, and $183.27, respectively.

Petitioner was married in Sao Paulo, Brazil, on February 24, 1945. His spouse, Ruth Doris Reese, was then, and has remained, a citizen of Brazil. Since July 1, 1967, petitioner and his spouse have been residents of Sao Paulo, Brazil, and nonresidents of the United States. Throughout this period the petitioner has served as the managing director of Companhia Goodyear. He received compensation from Companhia Goodyear as follows:

| | |
|---|---|
| 1969 | $69,518.64 |
| 1970 | 60,756.86 |
| 1971 | 73,642.74 |

Petitioner filed separate Federal income tax returns for each of these years and included in his gross income only one-half of the above amounts of total annual compensation in the belief that the other one-half was community property of his spouse. In the statutory notice of deficiency sent to petitioner, respondent de-

---

[2] On his Federal income tax returns for 1969, 1970, and 1971, petitioner claimed an exclusion from income under sec. 911, I.R.C. 1954, of only $12,500 annually. Respondent determined that petitioner was entitled to exclude $25,000 annually under sec. 911 and, accordingly, reduced petitioner's taxable income by $12,500 for each of the taxable years in issue. Under our decision here the petitioner is still entitled to exclude $25,000 annually under sec. 911. *Robert R. Bottome*, 58 T.C. 212 (1972), affd. 486 F. 2d 1314 (D.C. Cir. 1973).

termined that the gross annual income from Companhia Goodyear was fully taxable because under the Civil Code of Brazil it did not constitute community income.

In essence, our task is to determine what the community property law of Brazil was during the years in issue. Under Rule 146 such a determination of foreign law by this Court shall be treated as a ruling on a question of law. Moreover, this question may be resolved by ruling on motions for summary judgment. See 9 Wright & Miller, Federal Practice & Procedure, sec. 2444, p. 411 (1971), and cases cited therein.

Respondent objects on the ground that there is a material issue of fact sufficient to preclude granting petitioner's motion for summary judgment. He argues that the burden of proof is upon petitioner to compute the net amount includable in his income under Brazilian community property law which in itself constitutes a material issue of fact in controversy.

We disagree with the respondent. A mere dispute as to what foreign law is does not constitute a dispute as to a material fact sufficient to preclude action on a motion for summary judgment. *Caribbean Steamship Co. v. La Societe Navale Caennaise,* 140 F. Supp. 16 (E.D. Va. 1956), affd. sub nom. *Reynolds Jamaica Mines v. La Societe Navale Caennaise,* 239 F. 2d 689 (4th Cir. 1956). Here, the bulk of documents were submitted by petitioner and no conflict has arisen between counsel since the petition was filed in 1973 that they are truly representative of Brazilian law. Nor do we find the documents unpersuasive or inconclusive on the issue before us. We interpret respondent's position as simply stating that petitioner bears the burden of proving what amount of his earned income is attributable to his spouse under Brazilian law. Respondent must likewise show that Brazilian law attributes none of petitioner's earned income to his spouse. In each instance the parties must assist this Court in its final determination as to what amount of earned income is attributable to petitioner, and that remains a question of law. The computed amount of earned income will be an ultimate fact based on our ultimate conclusion regarding Brazilian community property law.

Respondent's emphasis upon determining the net income attributable to petitioner as a question of fact is identical to that of the plaintiff in *Komlos v. Compagnie Nationale Air France,* 111 F. Supp. 393 (S.D.N.Y. 1952), revd. on other grounds 209 F.

2d 436 (2d Cir. 1953), cert. denied 348 U.S. 820 (1954). There the plaintiff objected to a motion for summary judgment but presented no evidence contradicting that introduced by the defendant. The court dismissed plaintiff's objection on the ground that no genuine issue concerning Portuguese law was shown by the evidence submitted. Since respondent has presented no evidence to contradict petitioner's proffered documents, we do not see any apparent dispute between the parties over the content of Brazilian law. We find the law of Brazil clearly stated in the documents presented for our consideration. How that law, as stated, is to be interpreted is a question of law and presents no material fact in controversy. We find the *Komlos* situation sufficiently analogous to the instant case, where no contradictory evidence has been introduced regarding the content of Brazilian law, to warrant a dismissal here of respondent's objection to petitioner's motion for summary judgment. See also the discussion in Miller, "Federal Rule 44.1 and the 'Fact' Approach to Determining Foreign Law: Death Knell For a Die-Hard Doctrine," 65 Mich. L. Rev. 613, 663-673 (1967).

In this Court the rule relating to establishing a matter of foreign law is that judicial notice by a court cannot be taken of foreign law. *Georges Simenon,* 44 T.C. 820, 835 (1965). Interests in income of a conjugal partnership may be determined by foreign law, but whether one spouse is taxable on one-half the income is to be determined under the law of the United States. Once rights are obtained by local law, they are subject to the Federal definition of taxability. *Helvering v. Stuart,* 317 U.S. 154, 162 (1942); *Katrushka J. Parsons,* 43 T.C. 331, 338 (1964).

The evidence submitted by the parties (primarily the petitioner) consists of relevant statutory language of the Brazilian Civil Code, legal documents filed in a suit brought by petitioner for declaratory judgment, an opinion of Brazilian counsel retained by petitioner, two judicial opinions delivered respectively by the highest court of Brazil and the highest court of a Brazilian state, and a commentary on a statutory provision of Brazilian law. The documents submitted have been properly authenticated and are attested copies acceptable to both parties and to this Court. Rule 143(d). Fed. R. Civ. P. 44(a)(2); 28 U.S.C. secs. 1740 and 1741 (1966); 9 Wright & Miller, Federal Practice & Procedure, sec. 2435, p. 390 (1971); 5 Moore, Federal Practice, par. 44.01[16] and [17] (2d ed. 1948). Although this

Court is not limited in its consideration of Brazilian law to the materials submitted by the parties, we are satisfied that the scope of those submitted is sufficient to enable us to render an opinion on the issue before us. 9 Wright & Miller, Federal Practice & Procedure, sec. 2444, pp. 405-413 (1971); 5 Moore, Federal Practice, par. 44.1.01, pp. 1652-1654.1 (2d ed. 1948).

There is no doubt that a citizen who earns income qualifying for exemption under section 911,[3] which in part is attributable to a noncitizen spouse under community property laws, need not include in gross income such income which is attributable to the other spouse. *Helen Robinson Solano*, 62 T.C. 562, 567-568 (1974).

We have reviewed the documents concerning Brazilian law submitted by the parties. It is our understanding that prior to 1962 compensation earned in Brazil was considered community property of both spouses even if earned by only one spouse. Arts. 262 and 263, Brazilian Civil Code. On August 27, 1962, article 263, subparagraph XIII, of the Brazilian Civil Code, was adopted as part of a "Statute of the Married Woman." While article 262 of the Brazilian Civil Code considers all assets and liabilities of spouses as community property, exceptions to these items are expressly enumerated in article 263. The addition of subparagraph XIII to article 263 in 1962 made "the civil produce of the work or industry of each spouse or of both" no longer community property. This effectively excluded thereafter any compensation earned by one spouse from the "community property" shared by

---

[3] All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. In relevant part, sec. 911 reads as follows:

SEC. 911. EARNED INCOME FROM SOURCES WITHOUT THE UNITED STATES.

(a) GENERAL RULE.—The following items shall not be included in gross income and shall be exempt from taxation * * *

(1) * * *—In the case of an individual citizen of the United States who establishes * * * that he has been a bona fide resident of a foreign country * * *, amounts received from sources without the United States * * * which constitute earned income attributable to services performed * * *
* * *

(c) SPECIAL RULES.—For purposes of computing the amount excludable under subsection (a), the following rules shall apply:

(1) * * *—The amount excluded * * * shall not exceed * * *
* * *

(B) $25,000 * * *
* * *

(3) TREATMENT OF COMMUNITY INCOME.—In applying paragraph (1), with respect to amounts received for services performed by a husband or wife which are community income * * *, the aggregate amount * * * shall equal the amount which would be excludable if such amounts did not constitute such community income.

both spouses. Respondent asserts that subparagraph XIII of article 263 governs this case and makes petitioner's earned compensation attributable solely to himself for years after 1962, and more specifically, during 1969, 1970, and 1971. We do not agree.

The property rights of spouses in Brazil take effect on the day they are married and are irrepealable. Art. 230, Brazilian Civil Code. In this way marital property rights in Brazil are comparable to those of Spanish citizens, where the earnings of the spouses during the marriage belong to both equally. *Helen Robinson Solano, supra.* As in Spain, Brazilian marital property rights endure throughout the marriage. They may be adjusted by *pre*-nuptial contracts only.

Since Brazilian marital property rights are regulated by the law in effect on the day of marriage, they are not subject to alteration by new laws passed after the day of marriage. The purpose behind this rule of irrevocability is (1) to protect the interest of each spouse and avoid one taking advantage of the other's weakness by obtaining benefits to his or her exclusive advantage, and (2) to protect the interests of third parties, particularly those who contract in good faith as creditors with the spouses.

Unlike the German, Swiss, or Austrian laws, the irrepealability of the property system between Brazilian spouses is a strict one. Thus, all marriage contracts are recorded in a real estate register office. Art. 261. The goal of such irrepealability is to keep the marital property system stable and unchangeable as long as the marriage lasts. This property system therefore rules the economic life of the married couple. Since the marriage is viewed as a "perfect juridical act" and is ruled by the laws existing at the time of its formation, the property rights of spouses, once acquired, cannot disappear by agreement of the parties, nor by resolutions made by one of the spouses, nor by determination of a later law. Thus, the addition of subparagraph XIII to article 263 in 1962 did not reach marriages celebrated earlier, such as petitioner's marriage.

Under the pre-1962 Brazilian law, which governs petitioner's marriage and marital property rights acquired therein, any property acquired during the marriage became the joint property of both the petitioner and his spouse. Hence, he and his spouse remained, before and after adoption of subparagraph XIII of

article 263 in 1962, joint owners of their property, including compensation paid petitioner by Companhia Goodyear in those years.

Respondent stresses language contained in an opinion by District Judge Dimas Borelli Machado which resulted from a declaratory judgment action petitioner brought against his spouse. In this action the petitioner requested that his earned compensation be declared excludable from community property and attributable under subparagraph XIII of article 263 solely to himself. This was exactly the position taken by respondent in his statutory notice of deficiency mailed to petitioner 3 days before commencement of the declaratory judgment suit. Petitioner admits that the suit instituted against his spouse was begun to resolve his tax dispute with the Internal Revenue Service.

Judge Dimas determined in his opinion that because the parties were married in 1945, they acquired rights at that time which were not altered by the new 1962 provisions because of "the principle of irretroactivity of laws." Thus, he concluded, the 1962 Statute of the Married Woman could affect only those marriages arising after August 27, 1962. The opinion elaborated upon what right petitioner's spouse had acquired to income earned by petitioner as a result of their marriage:

> Such right, however, should be understood according to its due terms, which does not mean that the wife is entitled to one half of the income resulting from the husband's work.
>
> * * *
>
> It seems obvious that what is communicated is that which the husband succeeds in saving from the income of his work, that is to say, in the language of economics, his gross revenue after deducting any necessary and voluntary expenses incurred, the property which the husband might acquire with the produce of his work being communicated as well, * * *

Respondent argues that the above language precludes our finding that one-half the compensation earned by petitioner is attributable to his spouse because only a lesser portion of his "civil produce" appears to be attributable to his spouse. We think this argument is without merit. In our opinion the Court was addressing itself to joint obligations and expenses incurred by petitioner and his spouse for which both were liable as joint property owners under the Brazilian Civil Code. The community property law of Brazil protects both spouses as well as their creditors who deal with them in good faith when they incur

necessary and voluntary expenses. There is no doubt that petitioner and his spouse are joint owners of the compensation he earned from Companhia Goodyear during the years in issue. Thus petitioner is entitled to exclude from his reported income the one-half of such income attributable to his spouse under Brazilian community property law.

One final argument is made by respondent. He asserts that the declaratory judgment action brought by petitioner was collusive on its face, and that this Court should not be bound by its determination. He urges that a collusive and nonadversary foreign suit should be no more persuasive than one brought in this country, citing *Faulkerson's Estate v. United States,* 301 F. 2d 231 (7th Cir. 1962), cert. denied 371 U.S. 887 (1962), and *Saulsbury v. United States,* 199 F. 2d 578 (5th Cir. 1952), cert. denied 345 U.S. 906 (1953). Respondent points out that the Commissioner was not a party to petitioner's suit, though he makes no claim that the Commissioner should have been a party. His position is that the petitioner and his spouse were not adversaries in that proceeding since it was to the advantage of both that petitioner be able to exclude one-half his earned income as community property from his Federal income tax returns.

In *Faulkerson's Estate v. United States, supra,* the Court of Appeals indicated that a decree obtained in an ex parte nonadversary State proceeding without a hearing on the merits would not bind a Federal District Court. It found the proceeding collusive in the sense that a decision was sought which would adversely affect the Government's right to additional estate tax. In the second opinion cited by respondent, *Saulsbury v. United States, supra* at 580-581, the Court of Appeals said:

By the word *collusion,* we do not mean to imply fraudulent or improper conduct, but simply that all interested parties agreed to the order and that it was apparently to their advantage from a tax standpoint to do so. We mean that there was no genuine issue of law or fact as to the right of the beneficiary to receive this income, * * *. The court did not determine whether the trustee or the beneficiary was entitled to the income therefrom. * * *

The declaratory judgment action brought by petitioner could be deemed "collusive" if we rest our conclusion on the fact that respondent was not a party thereto and agree that spouses are not ordinarily deemed to be adversaries. Likewise, no appeal has been taken from the declaratory judgment rendered by a lower

Brazilian court which admittedly reached a result which favors petitioner's position before this Court. However, we think that the action brought by petitioner presented a genuine issue of law as to the right of petitioner's spouse to one-half of petitioner's earned income during the years in issue. In the sense that such income might be deemed by the Brazilian court to belong exclusively to petitioner, a true adversary relationship existed based on his spouse's conflicting claim to one-half of his earned income. Moreover, unlike *Saulsbury,* the declaratory judgment determined that petitioner's spouse was entitled to one-half the net income earned by petitioner during the years in issue, and for the duration of the marriage itself. Finally, the law of Brazil is settled on the issue of community property between spouses, as our prior discussion indicates. The opinion rendered in petitioner's declaratory judgment fully comports with other evidence submitted in this case, including decisions of two higher Brazilian courts, as well as expert commentary and a legal memorandum from a licensed Brazilian attorney.

The court in *Faulkerson's Estate* concluded that, in a proper case (1) where the proceeding is adversary and not ex parte, (2) where a hearing is had on the merits, (3) where the question of law is settled by the appellate courts or where the judgment of an intermediate court may be fairly accepted as evidencing the law of the State, and (4) where the judgment is not collusive, a Federal court may well be bound by a determination of property rights by a State court. We think these criteria apply equally to the instant case, where a determination of property rights of Brazilian spouses must be made with regard to foreign law. Applying them, we find that the declaratory action brought by petitioner, fortified by evidence of settled Brazilian law as interpreted by its appellate and supreme courts, is sufficient to support petitioner's exclusion of one-half his earned income from his reported gross income.

Accordingly, we hold that petitioner may exclude from his reported gross income one-half of the income he earned as compensation during 1969, 1970, and 1971. Petitioner's motion for summary judgment will be granted and respondent's motion for summary judgment will be denied.

*An appropriate order will be entered.*