John F. CRAWFORD, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 156–80T.

United States Claims Court.

March 12, 1984.

Barry J. Hart, Washington, D.C., for plaintiff. Surrey & Morse, Washington, D.C., of counsel.

Mary M. Abate, Washington, D.C., with whom was Asst. Atty. Gen. Glenn L. Archer, Jr., Washington, D.C., for defendant.

## OPINION

MAYER, Judge.

Plaintiff Crawford seeks a refund of federal income taxes because the community property laws of France required him to allocate half his income to his non-resident alien wife and entitled him to reduce his reportable income by half.

## FACTS

Plaintiff is a United States citizen married to a Swedish citizen. Having met in Paris as students, they were married in Sweden on June 6, 1962. No pre-nuptial agreement was executed. After a month together in Europe, plaintiff returned alone to New York in July of 1962 to continue his studies as a second year law student. His wife joined him in New York in September of 1962, where they lived in a rented apartment until June 1964, while plaintiff completed his studies. Upon graduation in 1964, plaintiff became an associate with a law firm in Washington, D.C. He says the potential opportunity to work in the firm's Paris office was discussed at the time he joined the firm and was instrumental in his choice of that firm. Except for a two month trip to Europe in 1964, plaintiff and his wife lived and worked in Washington until February 1968.

In July of 1967, plaintiff and his wife bought a home in Washington which they lived in until February 1968 when he accepted a job with the International Labor Office in Geneva, Switzerland. Plaintiff says he was on leave from the law firm during his time in Geneva and it was agreed that he would return to work at the firm when he completed his duties there. He worked in Geneva until August 1970 when he rejoined his old law firm as an associate in its Paris office which had recently reopened. He became a partner in the firm in 1971. During the tax years 1973 and 1974, he lived and worked in Paris and this has continued to the present. He was admitted as a *conseil juridique,* permitting him to practice law in France, in 1973.

From August of 1970 through December of 1974, plaintiff and his wife lived in several rented apartments in Paris. Apart from some business and pleasure trips to the United States, they lived continuously in Paris through December 1974, the end of the period relevant here. In October of 1971, plaintiff sold his home in Washington which he had been renting to a tenant since his departure from the United States in 1968. The same month he purchased a va-

cation house in Switzerland. In 1979, he purchased an apartment in Paris.

Plaintiff does not remember if he ever registered to vote in the United States but his 1972 tax return showed a deduction for a political contribution. The couple paid New York state income taxes from 1962 to 1964 and District of Columbia income taxes from 1964 to 1968. One or both of them maintained bank accounts in New York from 1960 to 1964, in Washington from 1964 to the present, in Paris from 1960 to 1961 and 1970 to the present, and in Switzerland from 1968 to the present. They have held American Express and Diners Club credit cards since 1960.

Plaintiff became a member of the District of Columbia Bar in 1965 and joined the American and District of Columbia Bar Associations the same year. He has maintained his membership in those organizations since then.

The couple paid local real property taxes to the District of Columbia from 1967 to 1971, and have paid real and personal property taxes to the city of Paris since 1970. Plaintiff made no formal declaration of French domicile with any French authority before the end of 1974.

Plaintiff's wife has never renounced her Swedish citizenship. She worked in scientific research in New York from 1962 to 1964, in Washington from 1964 to 1968, and in Paris from 1972 to the present. Their child, born in Washington in 1966, has attended French schools since 1972.

On January 3, 1977, plaintiff timely filed a 1973 amended income tax return requesting a refund. The most important change from the original return was a 50% community property allocation of plaintiff's income, and corresponding deductions and credits, to his non-resident alien wife. He asserted the allocation was required because his marital property was governed by French community property law. Plaintiff also filed an amended return for 1974 based on the same community property allocation under French law asserted in the 1973 amended return.

The Internal Revenue Service (IRS) denied both requests for refund asserting that plaintiff was not entitled to the benefit of French community property law for 1973 and 1974 because his marital domicile had not been established in France. Plaintiff sued here and the case is now before the court on cross motions for summary judgment. The facts have been stipulated and there are no questions of material fact at issue. *See* RUSCC 56.

## CONTENTIONS

Plaintiff says he is entitled to a refund because his marital relationship has been governed by French law since his wedding in Sweden in 1962. Because France is his marital domicile, French community property law obligates him to allocate his worldwide gross income equally between himself and his wife. His income for federal income tax purposes, therefore, is only half what he reported in 1973 and 1974. He supports this conclusion by asserting his and his wife's intent since 1962 to ultimately reside in France, and the events and actions of his life which corroborate this stated intent and their desire to be bound by French law.

Defendant agrees that French substantive law controls here, but argues that a French court would not apply French community property law to plaintiff's income. It would rule that his marital domicile was not France and would apply the property law of the state of the actual marital domicile.

The parties agree that French community property law applies only to persons whose marital domicile is France. Unless a French court would find plaintiff's marital domicile to be France rather than New York or Washington, D.C., separate property states, plaintiff may not allocate one-half his income to his wife.

## DISCUSSION

During the tax years at issue here, the income of a United States citizen married to a non-resident alien and domiciled in a foreign community property state was allo-

**702**

cable between them according to the community property laws of the state unless an election to treat it differently was filed with the IRS. *See* I.R.C. § 981, *repealed by* Tax Reform Act of 1976, Pub.L. No. 94–455, § 1012(b)(2), 90 Stat. 1525, 1614. The right of a United States citizen with a marital domicile in France to divide income equally with a non-resident alien spouse because France is a community property state is unquestioned both in law and by the parties and their respective experts. *See, e.g., Estate of Vandenhoeck v. Commissioner,* 4 T.C. 125, 127 (1944); *Selby v. Commissioner,* 49 T.C.M. (P–H) ¶ 80,357 (1980); *Hall v. Commissioner,* 47 T.C.M. (P–H) ¶ 78,360 (1978). The predicate for income allocation is a finding that the marital domicile is France. This is the essence of the dispute.

■ France does not recognize the conflict of laws concept of *renvoi,* so this court must sit as a French court and apply French law to the facts presented. In determining foreign law, the court "may consider any relevant material or source, ... whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination shall be treated as a ruling on a question of law." RUSCC 44.1; *see* 9 Wright & Miller, *Federal Practice and Procedure* § 2444 (1971). Both parties have presented opinions of their experts on the creation of a marital domicile under French law. No substantive disagreement exists between them over the standard a French court would apply. Understandably, they disagree about the ultimate judgment a French court would reach.

■ The court must look to the local law of France to determine the ownership of the income. "In the determination of ownership, state law controls." *United States v. Mitchell,* 403 U.S. 190, 197, 91 S.Ct. 1763, 1768, 29 L.Ed.2d 406 (1970). Once ownership is established under local law, federal law governs its taxation. The guiding principle is that " ... with respect to community income, as with respect to other income,

federal income tax liability follows ownership." *Id.* at 197, 91 S.Ct. at 1768; *see Helvering v. Stuart,* 317 U.S. 154, 162, 63 S.Ct. 140, 144, 87 L.Ed. 154 (1942), *modified on reh'g,* 317 U.S. 602, 63 S.Ct. 175, 87 L.Ed. 223 (1942); *Poe v. Seaborn,* 282 U.S. 101, 110, 51 S.Ct. 58, 58, 75 L.Ed. 239 (1930). If domicile is France, a French court would apply French community property law; if not, the court would apply the property law of the state of domicile. Because plaintiff made no election under I.R.C. § 981, now repealed, to alter the traditional allocation of community property income, he will be entitled to his deduction if he establishes France as his marital domicile.[1]

*First Marital Domicile*

■ Determination of a French marital domicile starts with the avowed intent of the couple to be bound by the regime of French law over their marital property. The statement of intent must, however, be verified by objective evidence. A statement of intent in a pre-nuptial agreement would likely be conclusive, but here there was none. As plaintiff says, "Neither [a French court's] legal conclusion nor the ultimate fact of intent is dependent on the spouses having actually contemplated upon their marriage the issue of governing marital regime.... Rather, ascertainment of intent involves use of a legal construct...."

From the expert opinions presented, the standard for determining marital domicile under French law can be distilled into the following propositions:

1. In the absence of an express statement of intent in a pre-nuptial agreement, the court must determine the intent of the spouses in selecting a marital domicile.

2. The court must examine all facts and circumstances surrounding the couple's actions to either corroborate or disprove their stated intent.

---

1. The addition of I.R.C. § 879, by the Tax Reform Act of 1976, Pub.L. No. 94–455, § 1012, 90 Stat. 1525, 1612, governing the taxation of community income of a United States citizen who is married to a non-resident alien spouse postdates this controversy.

3. Great weight must be given to the location of the first marital domicile.

4. The court must consider evidence that the first marital domicile was not stable and that a subsequent domicile was in fact the first stable marital domicile.

Marital domicile is ultimately determined by intent which must be divined from the facts and circumstances viewed in light of human experience. *See, e.g., West v. United States,* 578 F.2d 1390, 217 Ct.Cl. 677 (1978); *Selby v. Commissioner,* 49 T.C.M. (P–H) ¶ 80,357 (1980); *Hall v. Commissioner,* 47 T.C.M. (P–H) ¶ 78,360 (1978). Marital domicile is unique in each case and in France the trial judge is invested with sovereign authority to reach a finding. Yet some accepted objective indicia of intent can be gleaned from the cases and from the opinions of the experts. Among them are: establishment of a home for an indefinite period, *District of Columbia v. Murphy,* 314 U.S. 441, 456, 62 S.Ct. 303, 310, 86 L.Ed. 329 (1941); *see Sochurek v. Commissioner,* 300 F.2d 34, 38 (7th Cir.1962); purchase of a house or real property, *District of Columbia v. Murphy,* 314 U.S. at 456–58, 62 S.Ct. at 310–311; *see Santiago v. Commissioner,* 61 T.C. 53, 56 (1973), *aff'd,* 510 F.2d 223 (D.C. Cir.1975); *Taira v. Commissioner,* 51 T.C. 662, 667 (1969); acceptance of an indefinite work position, *see Sochurek v. Commissioner,* 300 F.2d at 38; payment of taxes and establishment of credit, *District of Columbia v. Murphy,* 314 U.S. at 456–58, 62 S.Ct. at 310–311; *see Sochurek v. Commissioner,* 300 F.2d at 38; participation in the local culture, recreational activities, and education system, *see Taira v. Commissioner,* 51 T.C. at 668; exercising citizenship and voting rights, *see Santiago v. Commissioner,* 61 T.C. at 55; *Kamikido v. Commissioner,* 48 T.C.M. (P–H) ¶ 79,402 (1979); and membership in churches, clubs, and professional organizations, *District of Columbia v. Murphy,* 314 U.S. at 456–58, 62 S.Ct. at 310–311; *see Kamikido v. Commissioner,* 48 T.C.M. (P–H) at 1565.

Despite plaintiff's stated intent to establish his marital domicile in France, the facts and circumstances lead the court to conclude that the first marital domicile was the United States. The court is of the view that New York was only a temporary domicile and there is no evidence that plaintiff was other than a transient there until he finished law school. Upon graduation, however, he lived and worked in Washington while harboring a hope of someday going to France. But evidence of a "floating" intention to establish a domicile cannot prevail in the face of contrary actions. *See District of Columbia v. Murphy,* 314 U.S. at 455, 62 S.Ct. at 309; *Texas v. Florida,* 306 U.S. 398, 425–27, 59 S.Ct. 563, 576–577, 83 L.Ed. 817 (1939). Such activities as plaintiff joining a United States law firm and professional associations, and his wife accepting employment; assuming the burdens of credit and taxes in this country; and purchasing a home to live in amount to the creation of a marital domicile in Washington. Plaintiff and his wife effectively and intentionally located their professional, familial, and economic interests in Washington and this manifests their intent to establish their marital domicile there.

*Stability of Marital Domicile*

■ Despite some differences in emphasis, both experts agree that the first marital domicile must also have been stable if a French court were to find it controlling. If it was temporary, it may be overlooked. Plaintiff's expert acknowledges that a marital domicile could be found in the United States, but argues that it was only "temporary" and "preparatory" to an ultimately intended permanent one in France. Defendant's expert, however, says a French court looking at these facts and circumstances would find a stable domicile in Washington, despite plaintiff's stated intent.[2]

French law again looks to both the stated intent of the couple and the attending facts

---

2. The expert speaks to the question of whether a stable first marital domicile could have been established in the United States, then subsequently abandoned and a second one estab-

lished in France. Plaintiff has not raised or briefed this question so the court does not reach it.

and circumstances in judging the stability of the first marital domicile. A court looks to their actions as evidence of intent to maintain temporary roots in the United States while embracing permanent ties to France.

Beside the factors used in examining the question of first marital domicile, some additional ones are available to test stability. They go to the heart of plaintiff's position that despite their presence in the United States, he and his wife always intended to be domiciled in France and that their actions in both countries support this stated intent. In examining this argument, it is helpful to consider such events as the sale of the home in the United States and the purchase of one overseas; renunciation or adoption of citizenship; economic links with the United States; professional ties with the United States; payment of taxes; purchase of a burial plot; and accepting an indefinite work assignment in France.

On balance, plaintiff's and his wife's actions lead to the conclusion that the initial marital domicile established in Washington was stable. Two factors are most persuasive: the quality, depth, and stability of their ties to Washington during that period; and their lingering economic ties to Washington and equivocal economic ties to France through 1974. They kept their home in Washington until October of 1971 while renting in Paris. When plaintiff was made a partner in his law firm, they sold the Washington house, but bought one in Switzerland, not France. He maintained United States bank and credit accounts, as well as membership in professional organizations here. Indeed, he remained and remains a member of a Washington law firm, though assigned indefinitely to its Paris office. Plaintiff left the United States in 1968, but it was to work in Switzerland, not France. He did not reach France until 1970

when the Paris office of his law firm reopened. Whether this reopening was fortuitous or preplanned was not addressed. "While one's statements may supply evidence of the intention requisite to establish domicile at a given place of residence, they cannot supply the fact of residence there; . . . and they are of slight weight when they conflict with the fact." *Texas v. Florida,* 306 U.S. at 425, 59 S.Ct. at 576.

The court acknowledges plaintiff's argument about "stepping stone" career decisions designed ultimately to secure a legal position in France. Nevertheless, eight years passed from his marriage until his eventual arrival in France, nearly four of them spent living and working in Washington. "One's testimony with regard to his intention is, of course, to be given full and fair consideration, but is subject to the infirmity of any self-serving declaration, and may frequently lack persuasiveness or even be contradicted or negatived by other declarations and inconsistent acts." *District of Columbia v. Murphy,* 314 U.S. at 456, 62 S.Ct. at 310.

The events and circumstances occurring after the tax years at issue here are not relevant to this determination. The operative period is from the date of plaintiff's marriage until the end of the tax year in 1974, the last year of the current controversy, and the time plaintiff asserts his right to a French marital domicile. Events occurring thereafter show that plaintiff's career and lifestyle have evolved as he had hoped. But his early desire to ultimately be in this position, subject to the vicissitudes of life along the way, does not establish his and his wife's intent in 1962 or negate the fact that for a time they had a stable marital domicile in the United States. Once that is established, a French court and this court must give it preclusive effect.[3]

---

**3.** In administratively challenging the IRS determination for subsequent tax years, plaintiff and his wife contended that their first marital domicile was Sweden. Similarly, in the complaint filed in this case plaintiff alleged the "matrimonial" domicile was Sweden. On these motions for summary judgment, however, plaintiff has

explicitly abandoned that position. He filed a supplemental memorandum bringing the United States Tax Court decision in *Westerdahl v. Commissioner,* No. 14535–80 (Jan. 11, 1984), to the court's attention. The Tax Court held there that Sweden is a community property state for federal income tax purposes. Plaintiff asserts

## CONCLUSION

It is therefore ordered that plaintiff's motion for summary judgment is denied and defendant's cross-motion for summary judgment is granted, the case to be dismissed with costs to the prevailing party. *See* 28 U.S.C. § 2412(a); RUSCC 54(d).

It is so **ORDERED.**

this as another factor to be considered in deciding on the applicability of French community property law.

Even though their marriage certificate showed Sweden as their residence at the time of their wedding, plaintiff and his wife did not establish a marital domicile there, but left almost immediately for New York. That the couple may have been married under a community property regime in Sweden does not aid in deciding if the marital domicile is France. The court concludes that Swedish law is irrelevant to this case.