JAKE E. ROTH and ELIZABETH A. ROTH, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Roth v. Commissioner
Docket No. 11535-79.
United States Tax Court
T.C. Memo 1983-651; 1983 Tax Ct. Memo LEXIS 137; 47 T.C.M. (CCH) 178; T.C.M. (RIA) 83651; October 26, 1983. Howard J. Glicksman, for the petitioners. Cynthia J. Olson, for the respondent. FAY
MEMORANDUM OPINION FAY, Judge: Respondent determined a deficiency of $76,352 in petitioners' 1976 Federal income tax. After concessions, the issue is whether petitioner Jake E. Roth received a certain payment from a corporation in redemption of his stock or as a dividend distribution. The facts have been fully *138 stipulated and are so found. Petitioners, Jake E. Roth and Elizabeth A. Roth, resided in Denver, Colo., when they filed their petition herein. At all relevant times prior to October 1, 1976, petitioner Jake E. Roth (petitioner) and his brother William J. Roth (William) each owned 50 percent of the outstanding stock in Roth Boneless Beef, Inc., and Roth Investment Company (herein sometimes collectively referred to as the corporations). On July 7, 1976, petitioner and William executed a document entitled "Offer and Acceptance" wherein petitioner offered to sell all of his stock in the corporations to William for the total sum of $1,000,000. [1] On October 1, 1976, however, petitioner instead disposed of his stock pursuant to the following simultaneous and contractually interdependent transactions. His 500 shares of stock in Roth Investment Company were redeemed for $38,910. Pursuant to a stock purchase agreement, he sold 14,156 of his 15,000 shares of stock in Roth Boneless Beef to Roth Investment Company for $755,000, payable in cash in the amount of $45,000 and a promissory note in the amount of $710,000. [2] His remaining 844 shares of stock in Roth Boneless Beef were redeemed *139 in accordance with an agreement (herein the redemption agreement) which provided in relevant part as follows: THIS AGREEMENT, made and entered into this 1st day of October, 1976, by and between JAKE E. ROTH (hereinafter "Seller") and ROTH BONELESS BEEF, INC., a Colorado corporation (hereinafter "Purchaser" or "Corporation"). WHEREAS, Seller is the owner of 844 shares of stock of the Corporation; and WHEREAS, Seller desires to sell and Purchaser desires to purchase said stock of the Corporation; NOW THEREFORE, in consideration of these presents and the covenants set forth herein, it is hereby agreed as follows: 1. Sale of Shares. Purchaser shall purchase and Seller shall sell an aggregate of 844 shares of common stock of the Corporation. 2. Purchase Price. For said shares of stock Purchaser shall pay to Seller the sum of FORTY-FIVE THOUSAND AND NO/100 DOLLARS -- ($45,000.00) in cash or sufficient funds at closing. * * * 4. Automobiles. The 1974 Lincoln Continental Mark IV and the 1976 Lincoln Continental currently titled in the name of the Corporation shall be transferred to Seller at closing. 5. Undistributed Income.The Corporation is currently *140 showing on its books and records undistributed taxable income in the amount of $322,179.00, one-half of which is attributable to Seller. Said attributable income in the amount of $161,089.50 shall be distributed to Seller at closing. Consistent with the terms of the redemption agreement, petitioner did in fact receive a cash payment of $45,000, title to the two specified automobiles, and a cash distribution of $161,089.50 (herein referred to as the cash distribution). On its books, Roth Boneless Beef reported the cash distribution of $161,089.50 as a dividend, and thereafter issued petitioner a Form 1099-DIV reflecting that amount. To reflect the redemption of petitioner's 844 shares of stock, Roth Boneless Beef listed treasury *141 stock on its books at a cost of $45,000. Without reduction for any distributions made during the year, Roth Boneless Beef's earnings and profits were $275,474 as of the close of 1976. Roth Boneless Beef did not make any cash distribution to William in 1976. On their 1976 return, petitioners reported a capital gain of $139,664 based on the redemption of petitioner's 844 shares in Roth Boneless Beef. [3] They also reported receiving dividend income of $9,000 from Roth Boneless Beef. [4] In this notice of deficiency, respondent determined that the redemption of the 844 shares gave rise to capital gain of $29,354, and that petitioner's receipt of the cash distribution and the two automobiles resulted in dividend income of $161,089.50 and $16,025, respectively. [5]
*142 The only issue before us is whether petitioner received the cash distribution as a dividend or in redemption of his stock. [6] This case is unusual in that it involves a reversal of the typical positions taken by taxpayers and the government with respect to the question of "substance over form." Petitioners argue that regardless of the language of the redemption agreement, the cash distribution was paid in redemption of petitioner's stock and should be taxed accordingly. [7] Respondent counters that petitioner and Roth Boneless Beef structured the cash distribution as a dividend and are therefore bond by that form. [8] Alternatively, respondent argues that petitioner received a "constructive" dividend because Roth Boneless Beef paid more than the fair market value for petitioner's 844 shares. For the following reasons, we hold for petitioner. *143 Under our tax laws, it is a basic proposition that tax consequences should be determined by the substance of a transaction and not merely by its form. Commissioner v. Court Holding Co.,324 U.S. 331 (1945); Helvering v. Lazarus & Co.,308 U.S. 252 (1939); Glacier State Electric Supply Co. v. Commissioner,80 T.C. 1047, 1053 (1983). Taxpayers as well as the government are entitled to the benefit of this rule although in such situations taxpayers may face a higher than usual burden of proof. Ciaio v. Commissioner,47 T.C. 447, 457 (1967) (wherein this Court allowed petitioner to prevail on the basis of his contention that he should be taxed on the substance rather than the form of the transactions in issue); Landa v. Commissioner,206 F.2d 431, 432 (D.C. Cir. 1953), revg. a Memorandum Opinion of this Court. See Glacier State Electric Supply Co.,supra at 1053. Under appropriate circumstances, *144 courts employ the "step transaction" doctrine to determine the substance of transactions. The essence of the doctrine is that integrated transactions must be viewed together for purposes of determining certain tax consequences. In American Bantam Car Co. v. Commissioner,11 T.C. 397, 405 (1948), affd. 177 F.2d 513 (3d Cir. 1949), this Court stated: In determining whether a series of steps are to be treated as a single indivisible transaction or should retain their separate entity, the courts use a variety of tests. [Citation omitted.] Among the factors considered are the intent of the parties, the time element, and the pragmatic test of the ultimate result. An important test is that of mutual interdependence. Were the steps so interdependent that the legal relations created by one transaction would have been fruitless without a completion of the series? See Security Industrial Insurance Co. v. United States,702 F.2d 1234 (5th Cir. 1983). Clearly, the "step transaction" doctrine is applicable in the instant case. Petitioner's sale of his Roth Boneless Beef stock to Roth Investment Company, the redemption of his remaining *145 stock in that corporation by Roth Boneless Beef, the redemption by Roth Investment Company, and the cash distribution from Roth Boneless Beef, were contractually interdependent transactions which took place simultaneously. Moreover, the clear purpose of the transactions--to divest petitioner of his entire interest in the corporations and effectively give William sole ownership--could not have been accomplished in the absence of any one of these steps. Accordingly, we conclude that these integrated transactions must be viewed together for purposes of determining whether the cash distribution was, in substance, a dividend. Viewing the cash distribution in the context of these interrelated transactions, we fail to see how it can be characterized as a dividend. To constitute a dividend, a payment must be made to a shareholder in his capacity as a shareholder. Sec. 1.301-1(c), Income Tax Regs. The integrated transactions in the instant case left no room for such a payment. Simultaneous with the cash distribution, petitioner's interest in the corporations was in all *146 respects completely terminated. Under such circumstances, we do not think it is logical to view the cash distribution as having been paid to petitioner in his capacity as a shareholder since, upon receiving the payment, he was from that point on no longer a shareholder. See United States v. Carey,289 F.2d 531, 538 (8th Cir. 1961). [9] Accordingly, we conclude that the cash distribution represented nothing more than a payment in connection with the termination of petitioner's stock interest rather than a dividend. That Roth Boneless Beef made no similar distribution to William, who was also a 50 percent stockholder in the corporation, certainly lends support to this conclusion. See Pierce v. Commissioner,61 T.C. 424 (1974). Respondent argues in the alternative that if the cash distribution is treated as *147 part of the redemption price for petitioner's stock, then Roth Boneless Beef redeemed 844 shares for $206,089.50, [10] or $244.18 per share, far in excess of the $53.33 per share paid by Roth Investment Company for the 14,156 shares it acquired. On that basis, respondent contends petitioner must still be treated as having received a "constructive" dividend to the extent Roth Boneless Beef paid him more than fair market value for the 844 shares. We, however, reject this argument because we do not view these transactions in the same manner as respondent. As discussed, the redemption of 844 shares by Roth Boneless Beef and the sale of 14,156 shares to Roth Investment Company must be viewed together, not as independent transactions. In that light, it is obvious that the cash distribution was received not only in consideration for the 844 shares redeedmed by Roth Boneless Beef, but also as additional consideration for the 14,156 shares simultaneously acquired by Roth Investment Company. Petitioner disposed of his entire interest in Roth Boneless Beef pursuant to a series *148 of interrelated transactions and, when the "dust settled," he had $961,089.50 to show for it. Significantly, this amount is consistent with the price at which petitioner originally agreed to sell these same shares to William pursuant to the July 7, 1976, "Offer and Acceptance" agreement. [11] That Roth Boneless Beef paid him $206,089.50 and redeemed only 844 shares ($244.18 per share), and a related corporation paid him $755,000.00 and acquired 14,156 shares ($53.33 per share), was of no economic consequence to petitioner. Viewing the transactions together, petitioner received $961,089.50 for his 15,000 shares of stock in Roth Boneless Beef, or $64.07 per share. Under the circumstances of this case, we conclude that he should be taxed on that basis. [12]
*149 To reflect concessions and the foregoing, Decision will be entered under Rule 155.
Footnotes
1. In addition to the $1,000,000, the parties also agreed that the corporation was transfer two automobiles to petitioner. ↩
2. On January 7, 1977, petitioner and Roth Investment Company executed a modification to the stock purchase agreement wherein the purchase price for the 14,156 shares was reduced for $755,000 to $702,000. This adjustment was made to reflect that the original purchase price was based on an inaccurate valuation of the stock.↩
3. On their return, petitioners claimed an adjusted basis of $13,425 in the 844 shares of stock redeemed by Roth Boneless Beef. Although the sum of the stated redemption price ($45,000) and the cash distribution ($161,089.50) was $206,089.50, petitioners reported a gross redemption price of only $153,089, thus resulting in a reported capital gain of $139,664. The record contains no explanation of how and on what basis petitioners arrived at a gross redemption price of $153,089. ↩
4. Apparently, this gross dividend figure was intended to reflect petitioner's receipt of the two automobiles. ↩
5. By treating the cash distribution ($161,089.50) as a dividend, respondent determined that the gross redemption price for the 844 shares was $45,000.00. Since respondent also determined that petitioner had an adjusted basis of $15,646 in the 844 shares, he computed a capital gain of $29,354 based on the redemption of those shares.↩
6. The parties now agree that petitioners received dividend income of $12,500 as a result of petitioner's receipt of the two automobiles from Roth Boneless Beef. This agreement with respect to the automobiles does not, however, affect our analysis with respect to the cash distribution. ↩
7. Petitioners argue that we should ignore the "form" of the cash distribution since he did not know the payment was being structured as a dividend when he executed the redemption agreement. Although we agree that any tax consequences herein should be based on the substance of the transactions, we do not reach that conclusion on the basis of any "mistake of fact" petitioner may have made when he executed the redemption agreement. ↩
8. Obviously, since petitoner is not a corporation and thus does not qualify for the "dividends received" deduction under sec. 243, I.R.C. 1954, from a tax standpoint it was disadvantageous for petitioner to structure the cash distribution as a dividend. It is also far from clear why Roth Boneless Beef sought to have the cash distribution treated as a dividend. Although a dividend distribution reduces a corporation's earnings and profits, we note that amounts distributed by a corporation in a redemption also generally result in a substantial reduction in a corporation's earnings and profits. See sec. 312(e), I.R.C. 1954↩.
9. Compare American International Coal Co., Inc. v. Commissioner,T.C. Memo. 1982-204↩, affd. by Court Order (3d Cir., Mar. 8, 1983) wherein this Court held that a payment made by the taxpayer corporation was paid in order to redeem a shareholder's stock and was not compensation to the shareholder for services rendered.
10. The sum of the stated redemption price ($45,000) and the cash distribution ($161,089.50) was $206,089.50.↩
11. Pursuant to the "Offer and Acceptance" agreement, petitioner agreed to sell all of his stock in both Roth Investment Company and Roth Boneless Beef for a total amount of $1,000,000. See text, supra.↩ Significantly, the sum of the amount petitioner received in connection with the sale and redemption of his stock in Roth Boneless Beef ($961,089.50) and the amount he received in redemption of his stock in Roth Investment Company ($38,910) was $999,999.50. 12. Of course, there may be tax consequences to the corporations as a result of their disproportionate payments. Because Roth Boneless Beef paid $206,089.50 to redeem only 844 shares, Roth Investment Company was able to pay less than full value for the 14,156 shares it acquired. However, since the corporations are not parties to the instant action, it is unnecessary for us to make any such determination.↩